435 So.2d 981 (1983)
Mildred K. MEISTER and Abraham Meister, Appellants,
v.
Paul FISHER, Emerald Hills Country Club, Inc., Continental Insurance Company and Allstate Insurance Company, Appellees.
No. 82-585.
District Court of Appeal of Florida, Fourth District.
August 10, 1983.
Sam Daniels and Mark Hicks of Daniels & Hicks, Miami, and Sams, Gerstein & Ward, P.A., Miami, for appellants.
Joseph S. Kashi of Conrad, Scherer & James, Fort Lauderdale, for appellees Emerald Hills and Continental Ins.
DELL, Judge.
Mildred and Abraham Meister appeal from a final judgment in favor of the appellees Emerald Hills Country Club, Inc. and Continental Insurance Company.
This appeal involves a golf cart accident. Appellants and appellee, Paul Fisher, had each rented golf carts from the Emerald Hills Country Club, Inc. As they approached the seventh hole, Mr. Meister turned his golf cart to go to the restroom area for a drink of water. The Fishers elected to follow the Meisters. The Meisters stopped their golf cart at the restroom facilities and as Mrs. Meister exited the golf cart, the golf cart operated by Paul Fisher struck the Meister cart from the rear. As a result of the impact, Mrs. Meister suffered personal injuries. Mr. Fisher alleged that the brakes failed on the golf cart that he was operating. Emerald Hills Country Club, Inc., owned both golf carts. The Meisters elected to abandon all other theories of liability against Emerald Hills Country Club, Inc., except such liability as may be imposed under the dangerous instrumentality doctrine of the State of Florida.
This appeal presents one important question: whether or not a golf cart, which is a self propelled vehicle which transports people, is within the dangerous instrumentality doctrine of the State of Florida.
In this state, the Supreme Court created the dangerous instrumentality doctrine. In Anderson v. Southern Cotton Oil Co., 73 *982 Fla. 432, 74 So. 975, 978 (1917), the Court laid down the principles underlying the doctrine:
The principles of the common law do not permit the owner of an instrumentality that is not dangerous per se, but is peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle, that is not inherently dangerous per se, but peculiarly dangerous in its use, properly operated when it is by his authority on the public highway. [Emphasis added.]
Numerous decisions have considered the dangerous instrumentality doctrine since Southern Cotton Oil Co., supra. However, until 1974, the courts of Florida appeared reluctant to extend this doctrine to vehicles other than those which were operated on public highways. Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940); Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (1947). For example, in 1962 the Third District Court of Appeal had no difficulty in determining that a "tow-motor" constituted a dangerous instrumentality because it was being operated on a public street or highway.
On the evidence, the jury was entitled to find that the injury occurred on a public street or highway maintained by the city for vehicular and pedestrian traffic, and that the "tow-motor" was a motor vehicle. On those facts, the dangerous instrumentality doctrine was properly applied. An owner or driver may not escape liability for negligent operation of a motor vehicle on a public street or highway because the required licensing of the vehicle has been omitted.
Eagle Stevedores, Inc. v. Thomas, 145 So.2d 551, 552 (Fla. 3d DCA 1962). [Footnotes omitted.]
In 1974, this Court concluded that use on a public highway does not constitute a qualification or limitation on the applicability of the dangerous instrumentality doctrine:
[T]he numerous Florida cases in which the dangerous instrumentality doctrine has been applied to motor vehicles virtually without exception have made reference to the fact that such vehicle is a dangerous instrumentality while operated upon the public highways of this state. Indeed it is! But, we do not understand this long established doctrine to mean, conversely, that a motor vehicle in operation is not a dangerous instrumentality while operated elsewhere than upon the public highways of this state. In other words, the reference to the motor vehicle being a dangerous instrumentality while operated upon the public highways is not a qualification or limitation upon the doctrine so as to make it applicable only when the motor vehicle is on the public highway. The qualification is that the automobile, not dangerous per se, becomes such when put into operation.

Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125, 128 (Fla. 4th DCA 1974).
Therefore, neither licensing requirements nor use on the public highways constitute necessary prerequisites for a motor vehicle to come within the dangerous instrumentality doctrine. The Supreme Court, on rehearing in Southern Cotton Oil Co., supra, stated the purpose and policy of the dangerous instrumentality doctrine when it said that
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 638 (1920). It is apparent from the cases interpreting the Florida dangerous instrumentality doctrine that the doctrine is not limited to automobiles but has been extended to trucks, buses, tow motors and other motorized vehicles.
A golf cart clearly falls within the definition of a "motor vehicle." The American Heritage Dictionary defines "motor vehicle" *983 as "Any self-propelled, wheeled conveyance that does not run on rails." Section 316.003(21), Florida Statutes (1981) defines a motor vehicle as follows:
Motor Vehicle  Any vehicle which is self propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, but not including any bicycle or moped as defined in subsection (2).
Coincidentally it should be noted at this point that properly equipped golf carts are capable of being licensed for use on the public highways.
Our analysis thus far demonstrates that golf carts are motor vehicles and that they may be used on highways and in off road locations. The question remains as to whether vicarious liability should be applied against the owner for the acts of a permissive user.
The two Southern Cotton Oil decisions by the Supreme Court of Florida extend liability to the owners of automobiles based upon the necessity of public policy. The Florida Supreme Court took judicial notice of numerous statistical studies existing in the early 1900's, and even at that early date concluded that "the automobile has become the most deadly machine in America." The Court compared industry and its dangers with the automobile and its dangers to innocent people in general. The Court's decision to extend liability to owners of automobiles when driven on public highways was based upon overriding necessity, that is, the protection of the public from the dangers of automobiles.
The question presented by the instant case is whether golf carts on golf courses operated by paying patrons should entail similar liability. Does the protection of the public require it? Frankly, we are unaware as to just how dangerous golf carts are, and the present record is not enlightening. The type of statistical information relied upon by the Supreme Court in Southern Cotton Oil has not been suggested to us in the instant case. Despite this, we think it fair to judicially notice that golf courses and carts are extremely prevalent in this state. Indeed, they are part of the overall image of a sunshine tourist and retirement playground.
Under all of these circumstances, we conclude that a golf cart on a golf course fulfills all the requirements of the dangerous instrumentality doctrine as established by the Southern Cotton Oil and as expanded by Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125 (Fla. 4th DCA 1974), except for the public policy considerations noted above. We therefore hold that based on the present record golf carts on golf courses are not within the dangerous instrumentality doctrine. However, we certify this question to the Supreme Court as one of great public importance:
SHOULD GOLF CARTS BE INCLUDED WITHIN THE DANGEROUS INSTRUMENTALITY DOCTRINE ENUNCIATED IN Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920), AND AS EXPANDED IN Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125 (Fla. 4th DCA 1974)?
If there are sufficient public policy considerations (dangers to the public) to warrant imposition of vicarious liability here, then the public and the golf courses deserve an answer to this question of statewide application. We do not find that such a public danger exists to the extent that we can take judicial notice thereof.
The judgment below is affirmed and the question certified.
AFFIRMED.
BERANEK, J., concurs.
LETTS, J., concurs specially with opinion.
LETTS, Judge, concurring specially.
I concur in the result reached, but disassociate myself from the flavor of the opinion which appears to be sympathetic to an extension of the doctrine. The basic motivation behind its adoption arose from the appalling slaughter taking place on the public highways. I have heard of no remotely parallel mayhem wrought on golf courses by golf carts.
*984 We would not be confronted with this problem had not this very court strayed from the beaten path, or rather the public road, in Reid v. Associated Engineering, supra, by extending the doctrine to private property. However, I seriously doubt that the author of that opinion ever envisaged it being applicable to golf carts on golf courses. I suppose motorized wheelchairs and lawn mowers will be the next to be urged upon us.