462 So.2d 1071 (1984)
Mildred MEISTER, et al., Petitioners,
v.
Paul FISHER, et al., Respondents.
No. 64223.
Supreme Court of Florida.
December 20, 1984.
Rehearing Denied February 26, 1985.
Sams, Gerstein & Ward, P.A., and Sam Daniels and Mark Hicks of Daniels & Hicks, Miami, for petitioners.
Gordon James, III and Joseph S. Kashi of Conrad, Scherer & James, Fort Lauderdale, for respondents.
Larry Klein, West Palm Beach, amicus curiae for The Academy of Florida Trial Lawyers.
Robert D. Peltz and Rossman & Baumberger, P.A., Miami, amicus curiae for Mary Kurtz.
ADKINS, Justice.
The Fourth District Court of Appeal certified the following question to this Court as one of great public importance:
Should golf carts be included within the dangerous instrumentality doctrine enunciated in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920), and as expanded in Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125 (Fla. 4th DCA 1974)?
Meister v. Fisher, 435 So.2d 981, 983 (Fla. 4th DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and hold that a golf cart that is being operated on a golf course is included within the dangerous instrumentality doctrine.
*1072 The facts of the case are not disputed. Petitioners Mildred Meister and her husband and respondent Paul Fisher were playing golf at the Emerald Hills Country Club. Petitioners and respondent, Paul Fisher, had each rented golf carts from the country club. When they approached the seventh hole, Mr. Meister turned their cart toward the restroom area to get a drink of water. The Fishers were following the Meisters. When Mrs. Meister got out of the golf cart, after it stopped moving, the cart driven by Fisher struck the Meisters' cart in the rear. As a result, Mrs. Meister suffered personal injuries. She and her husband sued Fisher, Emerald Hills Country Club, and their respective insurers. The Meisters based their sole theory of liability against Emerald Hills on the dangerous-instrumentality doctrine. The trial court found, as a matter of law, that a golf cart is not a dangerous instrumentality The district court affirmed, finding insufficient policy reasons in the record to apply the theory to golf carts.
This Court applied the dangerous-instrumentality doctrine to automobiles in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (1917).
In that case we held that:
This form of vicarious liability is not based on respondent superior or an agency conception, but on the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent. Southern Cotton Oil v. Anderson, 80 Fla. 441, 86 So. 629 (1920).
Jordan v. Kelson, 299 So.2d 109, 111 (Fla. 4th DCA 1974).
There is no question that vehicles other than automobiles can qualify as such instrumentalities, and indeed, the doctrine in Florida has not been so limited. In later years it has been applied to trucks, buses, tow-motors and other motorized vehicles. See, e.g., Eagle Stevedores, Inc. v. Thomas, 145 So.2d 551 (Fla. 3d DCA 1962). And although we have found no cases from other jurisdictions dealing with the precise issue involved here, those states which have enacted legislation in this area have not limited liability to the owner of an automobile. Instead, all of the statutes speak in terms of the owner of a motor vehicle. E.g., Cal.Veh.Code Ann. § 17150 (Deering 1972); Idaho Code § 49-1404 (1980); Iowa Code § 321.493 (1983); Michigan Stat.Ann. § 9.2101 (Callaghan 1981) [M.C.L.A. § 257.401]; N.Y.Veh. & Traf.Law § 388 (Consol. 1976).
A golf cart is clearly a motor vehicle. The legislature has recently specifically so defined it in section 316.003(68), Florida Statutes (1983), which states:
(68) GOLF CART.  A motor vehicle designed and manufactured for operation on a golf course for sporting or recreational purposes.
The same definition of golf cart is also set forth in section 320.01(22), Florida Statutes (1983). Coincidentally the legislature has also enacted section 316.212, Florida Statutes (1983), which prohibits the use of golf carts on public streets unless designated by a city or county as a permissible road for golf carts and only within a one-mile radius of a residence and the golf course. Other restrictions are also placed upon the use of golf carts on the public roads, such as the presence of adequate brakes, steering apparatus, safe tires, a rear view mirror and red reflectors on the front and rear. In a later appeal of the Southern Cotton Oil case, this Court discussed similar restrictions placed upon the operation of automobiles by the legislature. The Court then stated:
It is idle to say that the Legislature imposed all these restraints, regulations, and restrictions upon the use of automobiles, if they were not dangerous agencies which the Legislature felt it was its duty to regulate and restrain for the protection of the public.
80 Fla. at 456, 86 So. at 634. This observation applies with equal force to the restrictions that the legislature has now placed upon the operation of golf carts.
*1073 That the vehicle is being operated on the public highways of this state is likewise not required before the dangerous instrumentality doctrine can come into play. It is true that most of the Florida decisions applying this doctrine have made reference to the fact that the vehicle was being operated on the public highways. Some of the earlier cases even limited the doctrine to those vehicles operated on the public highways. See Crenshaw Brothers Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940); Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (1947). However, we believe that it was never the intention of this Court to so limit the doctrine. See Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125 (Fla. 4th DCA 1974).
We see neither reason nor logic in the view that a motor vehicle in operation, which is a dangerous instrumentality while being operated upon the public highway, somehow ceases to be a dangerous instrumentality the instant the driver causes it to turn off the public street or highway and onto a private drive or other private property. Although it is most probable that a motor vehicle being operated on private property would be moving at a slower speed than one being operated upon the public street or highway, common sense tells us that in all other respects such vehicle while in motion is equally dangerous to persons and property no matter where it is operated, and to make the owner's liability for his permittee's negligence in the operation of such vehicle depend upon whether the vehicle is on or off the public highway simply leads to absurd results.
Id. at 129.
Similarly, a golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway.
Despite concluding, as we have today, that a golf cart on a golf course fulfills all the requirements of the dangerous instrumentality doctrine, the district court still refused to expand the doctrine because it was unable to tell from the record whether golf carts pose a sufficient danger to the public to impose vicarious liability. We have no difficulty in determining that they do. As the district court itself noted, Florida's tremendous tourist and retirement communities make golf carts and golf courses extremely prevalent in this state. And there is evidence in this record from an expert who stated he has investigated numerous accidents involving golf carts that "the types of accidents caused by the operation of the carts are due to the particular design features of the carts and are identical to those involving other motor vehicle accidents." (Emphasis supplied.) Furthermore, as we discussed earlier in the opinion, the recent legislation concerning golf carts indicates the legislature's concern about the dangers of golf carts to the public.
Accordingly, we hold that the dangerous-instrumentality doctrine, which imposes liability upon the owner of a dangerous agency, when he intrusts it to someone who negligently operates it, applies to golf carts. In the instant case, the country club had rented the golf cart to Fisher. However, this factor does not call for a different result, since in Florida the doctrine clearly extends to and encompasses the bailment relationship. See Lynch v. Walker, 139 Fla. 188, 31 So.2d 268 (1947).
Therefore, we quash the decision of the Fourth District Court of Appeal in this case and we answer the certified question in the affirmative.
It is so ordered.
BOYD, C.J., and ALDERMAN and EHRLICH, JJ., concur.
OVERTON, McDONALD and SHAW, JJ., dissent.