566 So.2d 314 (1990)
AMERICAN STATES INSURANCE COMPANY, Appellant,
v.
Elvira BAROLETTI, Lawrence Baroletti, Esther E. Tilton, and Holiday Hotel Corporation, D/B/a Rolling Green Golf Course, Appellees.
No. 89-02840.
District Court of Appeal of Florida, Second District.
August 10, 1990.
Glenn N. Siegel of Sarasota, for appellant.
L. Floyd Price of Price, Price & Prouty, Chartered, Bradenton, for appellee Esther E. Tilton.
No appearances for Elvira and Lawrence Baroletti, Prudential Property & Cas. Ins. Co. or Selective Ins. Co.
ALTENBERND, Judge.
American States Insurance Company appeals an order granting summary judgment *315 which requires American States to provide primary liability coverage for Esther Tilton and to defend her in a personal injury lawsuit filed by Elvira and Lawrence Baroletti. The suit arises out of a golf cart accident on a golf course. The order also dismisses with prejudice American States' third-party complaint against Prudential Property & Casualty Insurance Company and Selective Insurance Company. We have jurisdiction. Insurance Co. of North America v. Querns, 562 So.2d 365 (Fla. 2d DCA 1990); Fla.R.App.P. 9.110(k).
We reverse the summary judgment because it determines that American States, as the insurer of the golf cart's owner, is obligated under the financial responsibility statutes to provide primary liability coverage for a permissive operator of the golf cart. Although a golf cart is a dangerous instrumentality and, thus, its owner generally has unlimited vicarious liability for its permissive operation, it is not a motor vehicle subject to statutory financial responsibility. In the absence of an overriding rule of law or public policy, the priority of coverage and the duty to defend the operator of a golf cart should be determined by the language of the relevant insurance policies. Since those insurance policies are not contained in this record, we remand this matter for resolution in the trial court.
On November 12, 1987, Ms. Tilton rented a golf cart from Holiday Hotel Corporation, d/b/a Rolling Green Golf Course (Rolling Green). Rolling Green owned the golf cart. While Ms. Tilton was operating the golf cart on the golf course, she allegedly ran over Mrs. Baroletti, causing injuries. Mr. and Mrs. Baroletti sued Ms. Tilton and Rolling Green.
Between the two defendants, three insurance policies appear to provide coverage to one or both defendants. Ms. Tilton has a policy on a mobile home in Florida and a homeowners policy on a house in another state. These policies are provided by Prudential and Selective and contain liability coverage for Ms. Tilton's benefit. Rolling Green has a business general liability policy through American States which covers its risk on the golf cart. Without the insurance policies, this court cannot determine whether the American States policy, by its terms, provides coverage to Ms. Tilton, or whether her two insurance carriers provide coverage to Rolling Green.
In the trial court, Ms. Tilton was defended by Prudential and Selective. They maintained that she was entitled to a duty of defense and primary coverage from American States, without regard to the language of the several insurance policies. They based this position upon an incorrect interpretation of Meister v. Fisher, 462 So.2d 1071 (Fla. 1984), and Allstate Insurance Co. v. Fowler, 480 So.2d 1287 (Fla. 1985).
In Meister, the supreme court held that a golf cart is a dangerous instrumentality. It based its holding, in part, upon the fact that a golf cart is defined as a "motor vehicle" for purposes of traffic regulation and motor vehicle licensing. §§ 316.003(68), 320.01(22), Fla. Stat. (1987). The supreme court reasoned that virtually any motor vehicle sufficiently dangerous to be regulated by the legislature is also sufficiently dangerous to be subjected to court-imposed liability under the dangerous instrumentality doctrine. As a result of the dangerous instrumentality doctrine, a golf cart owner generally has unlimited vicarious liability for the negligence of any permissive operator. In Meister, however, the supreme court did not establish that the owner's insurer would be primarily liable as a matter of law for all operators. It simply did not discuss this insurance issue.
In Fowler, the supreme court held that the automobile liability insurer for the owner of an automobile must provide a $10,000 primary layer of automobile liability coverage to protect both the owner and the operator because the automobile was a motor vehicle for purposes of statutory financial responsibility. See § 324.021(1), Fla. Stat. (1987). Fowler does not apply in this case because the golf cart is not a motor vehicle for the purposes of statutory financial responsibility. Likewise, the golf cart is not a motor vehicle for the purposes of *316 the Florida Motor Vehicle No-Fault Law.[1] § 627.732(1), Fla. Stat. (1987). Since this golf cart is not a motor vehicle for the purposes of financial responsibility or no-fault coverage, the statutory provision which makes the lessor's coverage primary for these purposes is not applicable to the rental of this golf cart. § 627.7263, Fla. Stat. (1987).
Admittedly, the question certified to the supreme court by the district court in Fowler was certified in terms of the dangerous instrumentality doctrine. Allstate Ins. Co. v. Fowler, 455 So.2d 506, 508 (Fla. 1st DCA 1984). The supreme court, however, wisely answered the question by relying upon statutory financial responsibility. The dangerous instrumentality doctrine assures an expanded source of compensation for victims of accidents arising from the unsafe operation of motor vehicles. The doctrine, however, does not provide a logical basis to determine the priority of insurance coverage between the active and vicarious tortfeasors and their respective insurers. In this case, the doctrine may give Rolling Green a powerful incentive to provide insurance for its golf carts, but it does not compel the insurer for the vicarious tortfeasor to involuntarily provide primary insurance for the active tortfeasor.
In the absence of some overriding rule of law or public policy, the courts of Florida have "traditionally recognized the freedom of parties to contract and the right to enforce the contract in accordance with the language therein." Fowler, 480 So.2d at 1290. In this case, it is possible that the right to indemnity could be a rule of law affecting the terms of the policies if American States does not insure Ms. Tilton. Fowler; Metropolitan Property and Life Ins. Co. v. Chicago Ins. Co., 479 So.2d 114 (Fla. 1985). Otherwise, it appears that the priority of the coverage should be determined by the language of the several policies, with careful attention to the "other insurance" clauses. Fowler; Sentry Ins. Co. v. Aetna Ins. Co., 450 So.2d 1233 (Fla. 2d DCA 1984).
Reversed and remanded.
SCHEB, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] It is significant that golf carts are defined as motor vehicles in the chapters of Florida Statutes concerning traffic control and motor vehicle licenses, in order to exempt them from licensure, and to generally ban them from the highway. §§ 316.212, 320.105, Fla. Stat. (1987). The fact that golf carts are not typically used on roads and highways does not alter the fact that they are dangerous instrumentalities. Meister v. Fisher, 462 So.2d 1071, 1073 (Fla. 1984). It does, however, place them outside the purposes of financial responsibility and no-fault coverage. §§ 324.011, 627.731, Fla. Stat. (1987). We would create a major change in insurance law if we judicially required the insurer of all dangerous instrumentalities to satisfy primary insurance requirements similar to those required by the legislature for highway vehicles.