CAWTHON, Senior Judge.
Gary Harless Canull, the plaintiff in the trial court, appeals from a summary final judgment entered in favor of Leasing Service Corporation (Leasing Service). Neither the relevant facts nor how the issues should be framed are in dispute.
*1096 Leasing Service financed the purchase of a road grader by Ingram Enterprises, Inc. (Ingram), Canull’s employer, and Canull alleges he was injured on an airport construction site by a fellow employee’s negligent operation of the road grader. It is not alleged that Leasing Service was negligent.
The issues are whether or not Leasing Service should be deemed the owner of the road grader, and if so, whether or not the road grader is a dangerous instrumentality uncfer Florida law.
Leasing Service supported its motion for summary judgment with two affidavits. In one, it alleged that the road grader is not required to be licensed with the Florida Department of Motor Vehicles, nor does it carry a license plate; it is not primarily designed to be operated on roads, or to be operated at a speed exceeding 35 miles per hour; and it is not used to transport persons or property. Its primary use, Leasing Service claims, is to level or maintain off-road surfaces.
In the other affidavit, Leasing Service maintains that it neither sells nor uses construction equipment, that Ingram negotiated directly with Tractor & Equipment Company to acquire a road grader, and that it did not participate in the negotiation. Leasing Service notes that Ingram made a down payment on the road grader directly to the company, and entered into a 60-month lease agreement on September 11, 1986 with Leasing Service, which financed the balance of the purchase price. The next day, the company shipped the road grader to Ingram directly. Leasing Service claims that it never possessed the equipment, and intended that Ingram would purchase the road grader at the end of the lease. Canull served no opposing affidavit.
As to the issue of ownership, we agree with Canull that Leasing Service was the owner of the road grader for the purpose of determining liability if the grader is determined to be a dangerous instrumentality. See Kottmeier v. General Motors Acceptance Corp., 575 So.2d 1293 (Fla.1991); Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363 (Fla.1990). In Kraemer, Michael Green entered into an agreement with General Motors Acceptance Corporation (GMAC) to lease a car. Green later loaned the car to Calvin Gary, who fatally struck another person with the car. At the time of the accident, Green was five months’ delinquent on rent payments, and the liability insurance had lapsed for nonpayment.
GMAC sought declaratory relief, claiming that it was not liable for the fatality under the dangerous instrumentality doctrine because it was not the beneficial owner under the lease. The lease provided that Green had an option to purchase at the end of the four-year term. He was responsible for maintaining the car, and obtaining the tag, registration, and liability insurance on the car. The court concluded that these were duties imposed on Green, rather than rights of beneficial ownership. It added that GMAC held more than naked legal title under the lease. For instance, GMAC retained the right to reacquire possession once Green defaulted on payments. Moreover, the lease prohibited the operation of the car by certain drivers, restricted the geographic area in which the car could be operated, prohibited certain uses, and restricted installation of equipment on the car. Finally, the lease expressly declared that GMAC remained the owner of the car, and that the lease would be considered a true lease for federal income tax purposes. Under the circumstances, GMAC could be held liable for Gary’s negligence under the dangerous instrumentality doctrine.
We find that many of the conditions relied on by the court in Kraemer pertain to the instant lease agreement. Leasing Service expressly limited Ingram’s use of the road grader. Without prior written consent of Leasing Service, Ingram was prohibited from removing the road grader from its specified address, from making alterations, additions, or improvements, and from disposing of or permitting it to be used by anyone other than employees of Leasing Service or Ingram. Should Ingram fail to pay rent, Leasing Service was permitted to take possession of the road *1097 grader without notice. The lease expressly declared that the road grader shall remain the property of Leasing Service, and that Ingram’s interest was that of a lessee only. For these reasons, we hold that Leasing Service was an owner of the road grader and if it is a dangerous instrumentality, Leasing Service would be held accountable for its negligent operation by a third party.
The dangerous instrumentality doctrine traces its genesis to the law of master and servant, and principal and agent. The master who entrusts a servant with a dangerous agency, such as fire, flood, water, poisons, and loaded firearms, locomotives, and street cars, is liable for any injury occasioned by its negligent use. Thomas v. Atlantic Assocs., Inc., 226 So.2d 100, 102 (Fla.1969). The court expressed the policy for that rule in the context of a negligently operated automobile:
The principles of common law do not permit the owner of an instrumentality that is not dangerous per se, but is peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle, that is not inherently dangerous per se, but peculiarly dangerous in its use, properly operated when it is by his authority on the public highway.
Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, 978 (1917). It is “the province of the courts to determine whether an instrumentality of known qualities is so peculiarly dangerous in its operation ” to invoke that principle of law. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 638 (1920) (e.s.). The court ruled in Southern Cotton Oil that automobiles operated on public highways were dangerous instrumentalities under the doctrine, and did so relying upon record evidence showing that operators of automobiles accounted for a carnage on the nation’s roadways, and recognizing that the state legislature had responded by regulating numerous aspects of automobile operation and that courts had relied on “common knowledge and common experience” in deciding which objects should be classified as dangerous instrumentalities.
The criteria used by the court in the two opinions in the Southern Cotton Oil cases have been selectively abandoned or utilized to expand the list of instruments deemed to be dangerous to include the following: automobiles not operated on public highways, Reid v. Associated Engineering of Osceola, Inc., et al., 295 So.2d 125 (Fla. 4th DCA 1974); motor vehicles operated in a public place but not licensed or regulated, Eagle Stevedores, Inc. v. Thomas, 145 So.2d 551 (Fla. 3d DCA 1962); heavy machinery not licensed or regulated but operating on a public right of way, Harding v. Allen-Laux, Inc., 559 So.2d 107 (Fla. 2d DCA 1990); motor vehicles licensed and regulated and operated in an area accessible to the golfing public, Meister v. Fisher, 462 So.2d 1071 (Fla.1984); and cranes not licensed or regulated and operating in areas not accessible to the general public, Mann v. Pensacola Concrete Constr. Co., Inc., 527 So.2d 279 (Fla. 1st DCA), rev. denied, 534 So.2d 400 (Fla.1988), Geffrey v. Langston Constr. Co., 58 So.2d 698 (Fla.1952), and Scott & Jobalia Constr. Co. v. Halifax Paving, Inc. or Use and Benefit of United States Fidelity & Guaranty Co., 538 So.2d 76 (Fla. 5th DCA 1989), approved, 565 So.2d 1346 (Fla.1990).
The road grader we are asked to classify as a dangerous instrumentality was not licensed or regulated and was operating on an airport construction site and its operator was apparently a fellow employee of the plaintiff.
It is apparent from the foregoing that the only opinions with persuasive prece-dential value would be those involving cranes, but it is also apparent from the following quotations from each that the cranes were considered dangerous because of their peculiar function of lifting loads or persons high enough to cause injury if negligently released:
... and while in the process of lifting one of the crates of plate glass from the gondola car the crane failed ... causing the crate to fall on James S. Poule, Jr., *1098 inflicting mortal injuries .., Geffrey, 58 So.2d at 699.
When the boom on the crane reached the limit of its extension, making contact with the ball, the cable snapped, dropping Mann to the ground below, ... causing serious injuries, Mann, 527 So.2d at 280.
... and from twenty-five feet up, a forty-foot section of pipe fell out of the sling. It crashed below, severely injuring Grier, ... Scott, 538 So.2d at 78.
It is common knowledge that road graders do not lift loads nor persons and it should be noted that none of the crane decisions mentions the speed or the weight of the cranes.
We find, therefore, that there is no precedent nor evidence contrary to the judgment of the trial court that this road grader is not a dangerous instrumentality.
Leasing Service also contends that this action is barred by § 324.021(9)(b), Fla. Stat. (Supp.1986), which exempts long term lessors of “motor vehicles” from financial responsibility under certain circumstances. Section 324.021(9)(b) is unavailing to the lessor of a road grader, for the section was intended to apply to lessors of automobiles. See Kraemer, 572 So.2d at 1367 (construing section as amended); Folmar v. Young, 560 So.2d 798, 800-801, amended on rehearing, No. 88-2571 (Fla. 4th DCA June 26, 1991).
Because of the conclusions set forth above the judgment appealed is affirmed.
JOANOS, C.J., concurs.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge