795 So.2d 209 (2001)
Randall HERRING, Susan D. Herring, and Justin Herring, a minor, by and through his parents and next friends, Randall Herring and Susan D. Herring, Appellants,
v.
HORACE MANN INSURANCE COMPANY, a/k/a Teachers Insurance Company, a foreign corporation, Appellee.
No. 4D00-4547.
District Court of Appeal of Florida, Fourth District.
September 26, 2001.
*210 Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, and Eric H. Luckman, West Palm Beach, for appellants.
Michael B. Davis of Paxton, Crow, Smith Bosso-Pardo & Davis, P.A., West Palm Beach, for appellee.
STONE, J.
We reverse a summary judgment entered in favor of Horace Mann Insurance Company on a coverage issue based on the wording in the Herrings' homeowner's insurance policy. The Herrings' son, driving a golf cart on a sidewalk, injured a pedestrian. The golf cart was owned by a third party. Horace Mann filed a complaint for declaratory relief asking for a determination of its rights and obligations under the terms of the policy.
In granting Horace Mann's motion for summary judgment and denying the Herrings' cross-motion for summary judgment, the trial judge found that:
There is no coverage. This is a golf cart that's used on the sidewalk. It's not being used for golfing. It's not being used on the insured's premises and it's not an RV. In fact, the statute defines RV, 320.01(B) as vehicle type unit primarily designed as a temporary living quarters for recreational camping or travel use. That's what I think they meant when they used the term RV under the terms of this policy.
The Herrings contend that they are entitled to coverage because a golf cart qualifies as a recreational motor vehicle under the policy which reads:
5. Motorized vehiclesWe pay for the bodily injury or the property damage which:
a. occurs on the insured premises and is a result of the ownership, maintenance, use, loading or unloading of:
1) a motorized vehicle if it is not subject to motor vehicle registration because of its type or use; or
2) a recreational motor vehicle;
b. results from:
1) a golf cart while used for golfing;
2) a utility, boat, camp or mobile home trailer, ... or a recreational motor vehicle; or
3) a motorized vehicle which is designed only for use of public roads and which is used mainly to service the insured premises;

*211 c. results from an insured's use of a recreational motor vehicle which is not owned by an insured.
A recreational motor vehicle is defined under the policy as:
Recreational motor vehicle means a motorized vehicle,[1] a trailer or attached equipment that is designed or is used for leisure time activities and which is not a motor vehicle.
(Footnote added). A motor vehicle is defined under the policy as:
Motor vehicle means a motorized vehicle, a trailer or a semi-trailer, and all attached machinery or equipment, if:
A. it is subject to motor vehicle registration; or
B. it is designed for use on public roads.
Horace Mann contends that golf carts are motor vehicles because they may be used on public roads and because, if properly equipped, golf carts are capable of being licensed for use on the public highways. Golf carts may be operated, by statute, on certain roadways under certain circumstances. See Meister v. Fisher, 435 So.2d 981 (Fla. 4th DCA 1983), quashed on other grounds by, 462 So.2d 1071 (Fla.1984); § 316.212, Fla. Stat. (2000).
We note that golf carts, as such, are not generally designed for use on public roads, and their use on public roads in Florida is prohibited except under conditions specified by statute. Id. A golf cart, patently, is designed for operation at low speed on a golf course or for similar sporting or recreational purposes, or for transportation on private property. We also note that there is no indication or claim that this golf cart was anything other than a standard golf cart and there is no claim that it was designed in some special manner for use on public roads or that it was otherwise subject to registration.
We recognize that subsection 5b(1) in the policy specifically extends coverage for bodily injury or property damage resulting from a golf cart while used for golfing. Horace Mann argues that this implies that coverage is not provided when a golf cart is used in another manner. However, subsection 5(c) also states that the "insured's use of a recreational motor vehicle which is not owned by an insured" is covered. Further, the policy provides that a recreational motorized vehicle is not a motor vehicle.
We conclude that because it is not clear whether a golf cart qualifies as a recreational motor vehicle under the terms of this policy, the provisions in section 5 are ambiguous. Cf. Fireman's Fund Ins. Cos. v. Pearl, 540 So.2d 883 (Fla. 4th DCA), rev. denied, 547 So.2d 1209 (Fla.1989).
In Fireman's, the provisions of the liability section of the policy covered the insureds for their use of "any auto or trailer" and for any "auto" accident. See id. at 883. The policy did not define the term "auto" as used anywhere in the policy. See id. However, the policy did contain a specific exclusion to the liability provisions:
We do not provide Liability Coverage for the ownership, maintenance or use of:
1. Any motorized vehicle having less than four wheels.
Id. at 884. The company conceded that the golf cart driven by the insured was a four-wheel vehicle, and therefore, the specific exclusion was not applicable. See id. However, the insurance company contended that the policy did not extend coverage *212 because a golf cart is not ordinarily thought of as an automobile. See id. This court concluded that the trial court properly determined that since the policy contained no definition of "auto" and since the golf cart, as a four-wheel motorized vehicle, was not within the exclusionary language, the policy was ambiguous and should be construed in favor of the insureds. See id.
Here, there is ambiguity because if a golf cart qualifies as a recreational motor vehicle, it would appear to be covered. In other words, as the policy is reasonably interpreted as including a golf cart within its definition of recreational motor vehicle, and as there is coverage for injury caused while operating such a non-owned vehicle, provided it is not a motor vehicle, and as a golf cart is not a motor vehicle under the policy definition, the accident would appear to be covered but for the ambiguity created by the provision providing coverage for injury and damage resulting from a golf cart while used for golfing. Because the policy language creates an ambiguity as to whether there is coverage for a golf cart when it is not being used for golfing, we must construe the policy in favor of the insured. See Union Am. Ins. Co. v. Maynard, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000).
We recognize the clear rule of construction that a specific provision in a policy governs over a general provision. However, such requirement for interpretation is applicable in cases where there is a conflict between two provisions. In this case, there need not be a conflict between the two subsections in question, but rather an ambiguity arises upon the application and interpretation of the policy terms. We note that it would have been a simple matter to exclude use of non-owned golf carts from the definition of recreational motor vehicle. We also note that neither side, here or in the trial court, asserts that there are any issues of fact that must be resolved.
We have considered, but deem inapposite, Meister v. Fisher, 462 So.2d 1071 (Fla.1984), and other circumstances involving motor vehicle policies or application of the dangerous instrumentality doctrine, as here, the issue is narrowly one of interpreting the language in this homeowner's policy. Simply because a golf cart may be considered a motor vehicle or a dangerous instrumentality for the purpose of establishing personal liability, there is no mandate for such a conclusion in interpreting the wording of every insurance contract.
Therefore, the judgment is reversed and we remand for entry of a judgment in favor of the insureds.
POLEN, C.J. and MARRA, KENNETH A., Associate Judge, concur.
NOTES
[1] Motorized vehicle is defined under the policy as "a self-propelled land or amphibious vehicle regardless of method of surface contact."