904 So.2d 542 (2005)
FESTIVAL FUN PARKS, LLC d/b/a Boomer's f/k/a GPROR, Inc., d/b/a Grand Prix Race-O-Rama, Inc., Appellant,
v.
Geoffrey GOOCH, Appellee.
No. 4D03-4252.
District Court of Appeal of Florida, Fourth District.
June 1, 2005.
Rehearing Denied July 11, 2005.
*543 Elliot H. Scherker, Julissa Rodriguez and Pamela A. DeBooth of Greenberg Traurig, P.A., Miami, for appellant.
Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Pompano Beach, and Russell S. Adler of Karmin, Adler & Padowitz, P.A., Fort Lauderdale, for appellee.
Tracy Raffles Gunn of Fowler, White, Boggs, Banker, P.A., Tampa, for Amicus Curiae-Florida Defense Lawyers Association.
TAYLOR, J.
Festival Fun Parks, LCC, d/b/a Boomer's (Boomer's) appeals a final money judgment arising out of a go-kart crash at its track. The plaintiff, Geoffrey Gooch, was injured when another go-kart bumped his go-kart, causing him to crash into a retaining wall. The trial court applied the dangerous instrumentality doctrine, making Boomer's vicariously liable for the negligence of the unknown driver who bumped Gooch's go-kart. We reverse for a new trial, holding that the dangerous instrumentality doctrine does not apply to concession go-karts.
Steven Hix, the Executive Director of the International Recreational Go-Kart Association, was the sole expert to testify at trial. His organization has developed guidelines and standards for the manufacture, design, construction, and operation of concession go-kart tracks. Hix testified that at the time of this accident in April 2000, the equipment at Boomer's met or exceeded the relevant industry standards and state laws in Florida. The cars were appropriate for the track. In addition, Boomer's warnings, including both signs and audio warnings, met all standards.
Hix testified that concession go-karts differ from racing go-karts in speed. While some racing go-karts can travel nearly 200 MPH, concession go-karts range in top speed from 14 MPH at a family-type track to 18-20 MPH at tracks designed for older drivers. He estimated that at the time of this accident plaintiff was traveling between 18 and 20 MPH.
Hix testified that less than 3% of all riders have "incidents" and that less than 1% are injured seriously enough to require emergency room treatment. According to Hix, serious injuries are a "pretty rare occurrence."
The plaintiff testified that he had never been in a go-kart before the night of the accident. He said he did not know that he could be seriously injured. However, Boomer's warning did state: "Injury could result from use of this attraction. Race at your own risk. We are not responsible for the actions of other drivers."
A sign displayed on the cars said "no bumping." Yet, this accident occurred when the plaintiff's car was bumped on the rear corner by another car. The plaintiff's *544 car spun out, turned sideways, and smashed into the inside retaining wall. The plaintiff admitted that it was possible that he cut off the car that bumped him. He said he never saw the car that hit him. Almost immediately, he experienced back pain.
Plaintiff's doctors determined that he suffered compression fractures of the twelfth thoracic vertebra and the first lumbar vertebra. Although disputed by Boomer's IME physician, who thought the injury was pre-existing, the plaintiff's doctors and the jury concluded that the fractures were causally related to the go-kart accident. Plaintiff continues to suffer pain. He has a 15% whole body impairment from a permanent injury.
The amended complaint contained two counts. The first count alleged the failure to instruct patrons regarding safe operation of the vehicles and the failure to warn of the risks of racing. The second count alleged that Boomer's, as owner of the go-karts, was vicariously liable for the negligence of the unknown driver under the dangerous instrumentality doctrine.
The trial court ruled that a go-kart is a dangerous instrumentality as a matter of law and entered a partial summary judgment on this issue. In so ruling, the court found that go-karts meet the definition of motor vehicles under two sections of the Florida Statutes. The court further found that there was no "serious difference" between a go-kart and a golf cart, which had already been determined to be a dangerous instrumentality by the Florida Supreme Court. See Meister v. Fisher, 462 So.2d 1071 (Fla.1984).
Pursuant to its partial summary judgment ruling, the trial court instructed the jury that Boomer's was "responsible for the negligence, if any, of all persons who were operating go-karts at BOOMERS at the time of the incident in question."
The jury found that Boomer's, the unknown driver, and the plaintiff were all negligent. It apportioned the negligence 65% to Boomers and the unknown driver and 35% to Gooch. The jury awarded the plaintiff $40,919.58 for his past medical bills, $135,000 in future medical expenses, and $130,000 in pain and suffering damages, for total damages of $305,919.58. The trial court then reduced that amount by the comparative fault amounts, entering a final judgment in the amount of $198,847.73.

Dangerous Instrumentality Doctrine
The main issue in this case is whether the trial court properly applied the dangerous instrumentality doctrine to a go-kart amusement ride operated on an enclosed track. Because this presents a question of law, we review the issue de novo. See D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (holding that pure questions of law are reviewed de novo).
The Florida Supreme Court first applied the dangerous instrumentality doctrine to automobiles in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 631-34 (Fla.1920). The dangerous instrumentality doctrine "imposes strict liability on the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another." Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000). Florida is unique in that it is the only state to have adopted this rule by judicial decree. Burch v. Sun State Ford, Inc., 864 So.2d 466, 470 (Fla. 5th DCA 2004).
In concluding that a go-kart meets the criteria for applying the dangerous instrumentality doctrine, the trial court relied upon Meister, 462 So.2d at 1072. In Meister, the Florida Supreme Court extended the doctrine to golf carts. The court observed that "there is no question that vehicles other than automobiles can qualify as *545 such instrumentalities, and indeed, the doctrine in Florida has not been so limited. In later years it has been applied to trucks, buses, tow-motors and other motorized vehicles."
In a 4-3 decision, the court held that a golf cart falls within the doctrine due, in part, to Florida statutes that specifically define the term "golf cart" as a motor vehicle. Id. (citing to sections 316.003(68) and 320.01(22), Florida Statutes (1983)).
Although there are no Florida statutes that specifically define the term "go-kart" as a motor vehicle, the trial court concluded that a go-kart meets the definition of a "motor vehicle" found in two statutes. Section 316.003(21), Florida Statutes, defines a "motor vehicle" as "any self-propelled vehicle not operated upon rails or guideway, but not including any bicycle, motorized scooter, electric personal assistive mobility device or moped." Section 322.01(26), Florida Statutes, defines a "motor vehicle" as "any self-propelled vehicle, including a motor vehicle combination, not operated upon rails or guideways, excluding vehicles moved solely by human power, motorized wheelchairs, and motorized bicycles as defined in s.316.003."
We note that yet another definition of a "motor vehicle" appears in Chapter 320, which governs motor vehicle licenses:
(1) "motor vehicle" means:
(a) An automobile, motorcycle, truck, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power, but the term does not include traction engines, road rollers, such vehicles as run only upon a track, bicycles or mopeds.
Section 320.01 (2003)(emphasis added).
However, section 320.01 defines "motor vehicles" in a manner that appears to exclude go-karts, because it limits the definition to vehicles, such as automobiles and trucks, which are "operated on the roads of the state" and excludes "such vehicles as run only upon a track."
The only statute which specifically discusses go-karts defines them as an "amusement ride." Section 616.242(3)(d), Florida Statutes (2003) states:
(d) "Go-kart" means an amusement ride vehicle controlled or driven by patrons specifically designed for and run on a fixed course.
Section 616.242(3)(a) defines an amusement ride as:
... any building, structure, or mechanical device or combination thereof through which a patron moves, walks, or is carried or conveyed on, along, around, over, or through a fixed or restricted course or within a defined area for the purpose of giving its patrons amusement, pleasure, thrills, or excitement.
These descriptions of go-kart amusement rides seem at odds with the above discussed definitions of "motor vehicles."
In any event, since Meister, at least two appellate courts have determined that the statutory definitions of "motor vehicle" are not controlling. See Edwards v. ABC Transp. Co., 616 So.2d 142, 143 (Fla. 5th DCA 1993) (holding that a trailer is not a dangerous instrumentality notwithstanding the fact that it meets the definition of a motor vehicle under Chapter 320 of the Florida Statutes pertaining to motor vehicle licensing); Harding v. Allen-Laux, Inc., 559 So.2d 107, 108 (Fla. 2d DCA 1990) (holding that a forklift is a dangerous instrumentality though not a "motor vehicle"). In Harding, the second district stated:
For the purposes of the judicially created dangerous instrumentality doctrine, *546 the various definitions of "motor vehicle" within the Florida Statutes are not dispositive. The doctrine is not necessarily invoked by any statutory definition of motor vehicle. Instead, it is invoked by a judicial decision that "an instrumentality of known qualities is so peculiarly dangerous in its operation as to" justify the doctrine. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 450, 86 So. 629, 638 (1920) (on petition for rehearing).
When the supreme court extended the dangerous instrumentality doctrine to golf carts in Meister, it did so not simply because golf carts are defined as motor vehicles. The court deemed it significant that golf carts, like automobiles, are extensively regulated by the Florida legislature.[1] It quoted the court's reasoning in Anderson, that the legislature would not have "imposed all these restraints, regulations, and restrictions upon the use of automobiles, if they were not dangerous agencies," and held that "[t]his observation applies with equal force to the restrictions that the legislature has now placed upon the operation of golf carts." Id. (quoting Anderson, 86 So. at 634). By contrast, concession go-karts are not extensively regulated by statute.
Meister also focused on the relative danger posed by golf carts when deciding to include them within the scope of the dangerous instrumentality doctrine. The court stated that "a golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway." The court noted that there was expert evidence in the record that the causes of golf cart accidents are "identical to those involving other motor vehicle accidents." Meister, 462 So.2d at 1073. In contrast, the only expert testimony in this case was that go-kart accidents causing serious injuries are "pretty rare."
We conclude that the dangerous instrumentality doctrine does not apply to concession go-karts.[2] We have considered the plaintiff's argument that Boomers was not prejudiced by the trial court's partial summary judgment on the dangerous instrumentality doctrine and find it to be without merit.
Based on the foregoing, we reverse the final judgment, remand for a new trial, and direct the trial court to vacate the partial summary judgment on the plaintiff's vicarious liability claim in Count II.
Reversed For New Trial.
GUNTHER and STONE, JJ., concur.
NOTES
[1] "Coincidentally, the legislature has also enacted section 316.212, Florida Statutes (1983), which prohibits the use of golf carts on public streets unless designated by a city or county as a permissible road for golf carts and only within a one-mile radius of a residence and the golf course. Other restrictions are also placed upon the use of golf carts on the public roads, such as the presence of adequate brakes, steering apparatus, safe tires, a rear view mirror and red reflectors on the front and rear." Meister, 462 So.2d at 1072.
[2] Several Florida circuit courts have reached the same conclusion, based upon the underlying rationale of the dangerous instrumentality doctrine and applicable statutory provisions. See Gilliland v. Adventure Golf & Games, Inc., No. 2000-3005-CA-CV-B (Fla. 4th. Jud. Cir. Nov. 19, 2001); Nelson v. Festival Fun Parks, L.L.C., No. 02-5272 CACE (07)(Fla. 17th Jud. Cir. July 16, 2003); Smith v. Festival Fun Parks, L.L.C., etc., No. CACE 01-00627(09) (Fla. 17th Jud. Cir. Jan. 5, 2004). See also Westchester Fire Ins. Co. v. Baughn, 257 So.2d 903, 904 (Fla. 1st DCA 1972) (holding that go-karts are not "motor vehicles" under insurance clause excluding "motor vehicles from theft coverage").