POLSTON, J.,
dissenting.
I respectfully dissent. The majority expands the dangerous instrumentality doctrine, a common law doctrine unique to Florida that was initially created to address the harm to the public arising from the negligent use of an instrumentality that is peculiarly dangerous in its operation. See S. Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) (on petition for rehearing). But the cases decided by this Court and the district courts of appeal have failed to adhere to this legal standard in a way that may be predictably applied, and the doctrine has become arbitrary.[1]
*310 The application of the doctrine has generally been based on the danger to the public caused by the primary use of the instrumentality rather than by where it may occasionally be operated. For instance, this Court has held that golf carts are dangerous instrumentalities because of their use on public golf courses, which thereby threaten the safety of the public on those courses. See Meister v. Fisher, 462 So.2d 1071 (Fla.1984). Further, an automobile has been held to be a dangerous instrumentality because of its use on roadways and potential harm to the public there. See S. Cotton, 86 So. 629.
In this case, based upon the doctrine’s focus on the primary use of the instrumentality and the resulting danger to the public, the First District properly observed that farm tractors “are neither used as a mode of transportation nor routinely operated in public places as to pose a sufficient danger to the public.” Rippy v. Shepard, 15 So.3d 921, 928 (Fla. 1st DCA 2009). In contrast, the majority erroneously finds the doctrine applicable even though farm tractors are primarily used on private property, not around the public, and the farm tractor in this case was being used on private property.
I.
In 1920, this Court set forth the Florida’s dangerous instrumentality doctrine as follows:
[O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
S. Cotton, 86 So. at 638. The doctrine “seeks to provide greater financial responsibility to pay for the carnage on our roads” and is “premised upon the theory that the one who originates the danger by entrusting the [instrumentality] to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.” Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990). Further, once a device is deemed a dangerous instrumentality, it retains that legal characterization no matter where it is operated. See Meister, 462 So.2d at 1073; Reid v. Associated Eng’g of Osceola, Inc., 295 So.2d 125, 129 (Fla. 4th DCA 1974).
It is important to note that a dangerous instrumentality is not synonymous with a dangerous per se item. This Court explained the difference as follows:
Wild animals and high explosives are dangerous per se; that is, they may inflict injury without the immediate application of human aid or instrumentality. Neither a locomotive, a trolley car, nor an automobile is dangerous per se— by or through itself — in that neither can inflict injury to a person, except by its use or operation. A locomotive in the roundhouse, a trolley car in the barn, an automobile in a garage, are almost as harmless as canary birds; but in opera *311 tion they are dangerous instrumentalities ....
S. Cotton, 86 So. at 632.
While dangerous instrumentalities are not dangerous per se, the dangerous instrumentality doctrine borrows the concept of strict liability from the common law dangerous per se doctrine. See S. Cotton, 86 So. at 630-32. Under the dangerous instrumentality doctrine, “[l]iability of the owner is said to be ‘strict’ because a plaintiff need not prove that an owner negligently entrusted the vehicle to its operator for liability to attach.” Burch v. Sun State Ford, Inc., 864 So.2d 466, 470 (Fla. 5th DCA 2004) (relying on S. Cotton, 86 So. at 630-32). But, unlike the common law dangerous per se doctrine, the plaintiff in a dangerous instrumentality action “must prove some fault, albeit on the part of the operator, which is then imputed to the owner under vicarious liability principles.” Id.
This concept of vicarious liability is borrowed from master-servant common law. See S. Cotton, 86 So. at 632 (“The servant is empowered by the master to discharge certain duties, and it is incumbent upon him to exercise the same care and attention which the law requires of the master; and if that care and attention be about the management and custody of dangerous appliances, the master cannot shift the responsibility connected with the custody of such instruments to the servant to whom they have been entrusted, and escape liability therefor.”) (quoting Barmore v. Vicksburg, S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, 214 (1904)). However, contrary to master-servant law, the dangerous instrumentality doctrine “imputes liability to an owner even when the operator disobeys restrictions on the use of the [instrumentality], unless the disobedience rises to the level of theft or conversion.” Burch, 864 So.2d at 470 (citing Hertz Corp. v. Jackson, 617 So.2d 1051, 1054 (Fla.1993); Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 836 (Fla.1959)).
The dangerous instrumentality doctrine is unique to the State of Florida. See Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (noting that the doctrine is unique to Florida). “Only the courts of Florida have gone the length of saying that an automobile is a ‘dangerous instrumentality,’ for which the owner remains responsible when it is negligently driven by another.” W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 73, at 524 (5th ed. 1984).
Significantly, the doctrine lacks any precise legal standards that courts may apply when determining whether an instrumentality is a dangerous instrumentality. See Canull v. Hodges, 584 So.2d 1095, 1097 (Fla. 1st DCA 1991) (“The criteria used by the court in the two opinions in the Southern Cotton Oil cases have been selectively abandoned or utilized to expand the list of instruments deemed to be dangerous .... ”). Courts often consider whether the device falls within the statutory definitions of a motor vehicle. See, e.g., Meister, 462 So.2d at 1072; Rippy, 15 So.3d at 922-23; Eagle Stevedores, Inc. v. Thomas, 145 So.2d 551, 552 (Fla. 3d DCA 1962). However, whether the item is a motor vehicle is not controlling. See Edwards v. ABC Transp. Co., 616 So.2d 142 (Fla. 5th DCA 1993) (holding that a trailer is not a dangerous instrumentality even though it meets the statutory definition of a motor vehicle); Harding v. Allen-Laux, Inc. 559 So.2d 107 (Fla. 2d DCA 1990) (holding that a forklift is a dangerous instrumentality even though it is not statutorily a motor vehicle). Further, courts often, but not always, consider the extent to which the Legislature has regulated the item. Compare Meister, 462 So.2d at 1072; S. Cotton, *312 86 So. at 634; Rippy, 15 So.3d at 922-23; with Harding, 559 So.2d at 108.
In particular, courts vary tremendously in how they assess the danger the instrumentality at issue poses to the public, which is a key question in determining the applicability of the doctrine. Courts sometimes consider the number and seriousness of accidents caused by the device. See S. Cotton, 86 So. at 633 (listing figures for the number of deaths caused by automobiles); Meister, 462 So.2d at 1073 (quoting expert witness’ statement that “the types of accidents caused by the operation of the carts are due to the particular design features of the carts and are identical to those involving other motor vehicle accidents ”); Festival Fun Parks, LLC v. Gooch, 904 So.2d 542, 543 (Fla. 4th DCA 2005) (noting testimony that “less than 3% of all [concession go-kart] riders have ‘incidents’ and that less than 1% are injured seriously enough to require emergency room treatment”). And in a nod to the dangerous per se common law roots of the doctrine, some courts analyze the particular characteristics of the device, such as its speed, size, and lifting ability. See Festival Fun Parks, 904 So.2d at 543 (noting that the top speeds of concession go-karts range from 14 to 20 miles per hour); Canull, 584 So.2d at 1097-98 (noting that road graders cannot lift items or people high off the ground); Harding, 559 So.2d at 108 (noting that a forklift is a large vehicle with “protruding steel tusks”).
Additionally, in assessing the instrumentality’s danger to the public, some courts consider whether the instrumentality is routinely operated in close proximity to the public. See Meister, 462 So.2d at 1073 (“Florida’s tremendous tourist and retirement communities make golf carts and golf courses extremely prevalent in this state.”); Rippy, 15 So.3d at 923 (explaining that farm tractors are not routinely operated in public places). Other courts consider the location of the instrumentality when the injury involved in the case occurred. See Harding, 559 So.2d at 108 (considering the fact that the forklift was operating on a public highway at the time); Eagle Stevedores, 145 So.2d at 552 (noting that the tow-motor caused the injury on a public street).
Furthermore, because the Court’s prior ruling that a golf cart is a dangerous instrumentality “sets the bar” so low, the decision of whether a device is a dangerous instrumentality can even come down to a comparison between the device at issue and a golf cart. For example, the Second District in Harding, 559 So.2d at 108, conducted the following analysis:
If an owner of a golf cart is liable under Florida’s dangerous instrumentality doctrine for the golf cart’s operation on a golf course by a lessee, Meister v. Fisher, 462 So.2d 1071 (Fla.1984), surely the owner of this larger, four-wheel vehicle with protruding steel tusks is liable under this doctrine for its operation on a public highway by a lessee.
In other words, does the instrumentality at issue appear to be more dangerous than a golf cart?
Contrary to the majority’s discussion of my dissent, I do not believe a golf cart “has become the one touchstone by which all other instrumentalities are measured.” Majority op. at 308. Instead, I believe the dangerous instrumentality doctrine currently lacks any precise legal standards, which makes its application arbitrary and which creates odd comparisons in some instances to golf carts. As a result, the doctrine has lost its original meaning and purpose.
Given the lack of a uniform set of factors courts consider when deciding whether to apply the dangerous instrumentality doctrine, I disagree with the majority’s con- *313 elusion that the First District misapplied the doctrine in Rippy. See majority op. at 306. In fact, contrary to the majority’s analysis, the First District actually considered the underlying question of the doctrine, namely whether the instrumentality is so peculiarly dangerous in its operation that it poses a significant danger to the public. See S. Cotton, 86 So. at 638. The First District properly considered this question when it explained that farm tractors are not routinely operated in public areas. Rippy, 15 So.3d at 923. In other words, how can an instrumentality be deemed a sufficient danger to the public to justify the application of the dangerous instrumentality doctrine when the instrumentality is not generally operated near the public so as to pose a danger to the public? While I agree with the majority that farm tractors operated on roadways present a danger to the public, that is not the primary use for farm tractors, as noted by the First District, and location of occasional use is not a determining factor. See Meister, 462 So.2d at 1073; Reid, 295 So.2d at 129.
The majority’s decision in this case exemplifies the problems associated with a limitless doctrine that lacks legal standards. For instance, the majority admits that farm tractors are “most commonly operated on farm property” away from the public. Majority op. at 309. However, the majority emphasizes that farm tractors can occasionally be operated in closer proximity to the public when conducting road maintenance, landscaping, and construction activities. Id. Because the majority now rules that the device at issue can be used around the public sometimes but not primarily, there are no limits on what can fall under the dangerous instrumentality doctrine in the future.
II.
In conclusion, if this Court had jurisdiction, I would approve the First District’s application of the dangerous instrumentality doctrine in Rippy because the First District properly analyzed the ultimate question of whether a farm tractor is peculiarly dangerous in its operation as to pose a significant danger to the public. With the majority’s expansive application of the doctrine to farm tractors that are not primarily used around the public, and was not being used around the public in this case, the doctrine seems to have lost its original meaning. What instrumentality would not seem more dangerous than a golf cart?
Accordingly, the Florida Legislature may wish to address this common law doctrine that is unique to Florida and adopt a more predictable legal standard for imposing vicarious liability for the negligent operation of instrumentalities. I respectfully dissent.
CANADY, C.J., concurs.

. Additionally, because there is no conflict between the First District's decision in Rippy and the decisions cited by the petitioner (or those cited by the majority), this Court does not have jurisdiction in this case. See art. V, § 3(b)(3), Fla. Const. The decisions applied the dangerous instrumentality doctrine in the context of completely different pieces of ma *310 chinery. See Meister v. Fisher, 462 So.2d 1071 (Fla.1984) (holding that a golf cart is a dangerous instrumentality); S. Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) (holding that an automobile is a dangerous instrumentality); Rippy v. Shepard, 15 So.3d 921 (Fla. 1st DCA 2009) (holding that a farm tractor is not a dangerous instrumentality); Harding v. Allen-Laux, Inc., 559 So.2d 107 (Fla. 2d DCA 1990) (holding that a forklift is a dangerous instrumentality). The varying conclusions regarding the particular pieces of machinery involved in these decisions, however, contradict a common sense understanding of what is dangerous and demonstrate the arbitrary nature of the doctrine.