226 So.2d 282 (1969)
Linda Kay FOSTER et al., Appellants,
v.
Raymond William LEE et al., Appellees.
Tammy RUTHRUFF et al., Appellants,
v.
Raymond William LEE et al., Appellees.
Nos. 68-375, 68-376.
District Court of Appeal of Florida. Second District.
August 8, 1969.
Rehearing Denied September 24, 1969.
Jerry Billings, of Billings & Frederick, Orlando, and Alan R. Schwartz, of Horton & Schwartz, Miami, for appellants.
Gordon Petteway, Lakeland, for appellees.
McNULTY, Judge.
On a tragic day in April, 1966, the Foster children, together with Mrs. Ruthruff and her daughter Tammy, were passengers in an automobile driven by Mr. Foster. The automobile collided with a tractor-trailer rig on a narrow road in Polk County, and Mr. Foster and his daughter Cathy Lynn were killed. All the other passengers were injured.
*283 At the time of the accident the defendant Hart owned the tractor portion of the rig and the defendant Adams Packing Association, hereinafter called Adams, owned the trailer portion. Hart was then engaged in picking and hauling citrus fruit for Adams, and had rented the aforesaid trailer from Adams; and Hart's employee, the defendant Lee, was the driver of the rig.
The Fosters in one suit, and the Ruthruffs in the other, are plaintiffs in the two separate actions before us which have been consolidated. The defendants in each case are the same. The trial court granted a partial summary judgment in favor of Adams and against plaintiffs, from which summary judgment plaintiffs appeal.
It is conceded that Adams, assuming actionable negligence, can be held liable under the facts in this case only if it is found that: (a) the trailer rented by Hart from Adams was itself a "dangerous instrumentality"; or, (b) Hart, and thus Lee, were servants or employees of Adams acting within the scope of their employment, rather than acting within the status of independent contractor. The trial court rejected both predicates.
We agree with the trial judge on the first point, that is, that as a matter of law, a trailer is not a "dangerous instrumentality" so as to impose vicarious liability on its owner. The dangerous tendencies of motorized vehicles in ordinary operation, tragically borne out by accident statistics, was the basis of our Supreme Court's initial characterization of those vehicles as "dangerous instrumentalities".[1] But it was said, that such vehicles are not dangerous "per se", but are so only in their ordinary use. A trailer, on the other hand, is certainly no more dangerous "per se" than is the tractor; and we cannot see how, of itself, it is dangerous in ordinary use. It is not motorized, nor is it in any way a self-propelled (automobile) vehicle. Not unlike a railroad car, it depends on a "power unit" for its mobility; and the power unit, with or without the trailer, is the self-sufficient source of hazard. True it is that a trailer, and the load it carries, adds to the weight and probably the destructive force of the entire rig; but certainly no more so than if the tractor unit was converted into a very large truck. In either case, it is the power unit which is "operated" prudently or negligently, as the case may be; and the size or weight of its cargo, or that which it hauls, bears only on the factors to be considered if the operator is to use due care. The same response is appropriately addressed to the argument that a trailer's peculiar characteristics make a substantially different integral vehicle out of the tractor, thus creating a new vehicle with greater dangerous tendencies. Again, the fact that the tractor is hauling a trailer is just another factor to be taken into account in the prudent operation of the tractor.
We hold, then, that trailers of themselves are not dangerous in their ordinary use and are thus not "dangerous instrumentalities". The owner of the trailer in this case is therefore not vicariously liable under the circumstances herein.[2]
*284 However, considering the totality of evidence adduced from the pleadings and depositions, we believe that there was an unresolved material issue of fact as to whether Hart was a direct employee of Adams as distinguished from an independent contractor.[3] Specifically, the evidence of control and supervision by Adams over Hart appears to be susceptible of varying inferences which are within the province of the jury to resolve.[4] The entry of a summary judgment in favor of Adams Packing Association, therefore, was error.
Reversed.
HOBSON, C.J., and PIERCE, J., concur.
NOTES
[1] See Southern Cotton Oil v. Anderson, (1920) 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, where the court in departing from precedent and the theoretical wisdom of authorities in the field was impressed by empirical data showing a great number of automobile accidents during each year. The same court, decades later, reviewed much higher automobile statistics, and concluded that the Southern Cotton Oil case was a wise decision. See Crenshaw Bros. Prod. Co. v. Harper, (1940) 142 Fla. 27, 194 So. 353. The increase in motor vehicle accidents noted in Crenshaw has tended to accelerate in the years since that opinion was written, but we are shown no statistics relating to trailers.
[2] See, also, our recent decision in Powell v. Henry, 224 So.2d 730, Opinion filed July 2, 1969.
[3] See Magarian v. Southern Fruit Distributors (1941) 146 Fla. 773, 1 So.2d 858, citing Restatement of the Law, Agency, § 220, re: factors to be considered in determining a master-servant relationship as distinguished from independent contractor.
[4] See Gregg v. Weller Grocery Co., (Fla. App.3d 1963) 151 So.2d 450.