PER CURIAM.
Turner Construction was the general contractor on a project to build new condominiums at Fisher Island. Turner Construction hired Teitelbaum Concrete Company as the subcontractor to build the concrete superstructure and Daniel Electric as the subcontractor to do the electrical work. Bennett McClary, the decedent, was Daniel Electric’s foreman on the project. Under the terms of the contract between Teitel-baum and Turner Construction, Teitelbaum was required to furnish all cranes needed for the job, and to be responsible for their safe operation. Teitelbaum agreed to comply with OSHA regulations, and assumed responsibility for damages resulting from accidents to workmen under its control. Teitelbaum agreed to indemnify and save harmless Turner Construction and the owner from any such claims for damages and assume the legal fees for their defense and pay any judgment rendered.
H & R Hoist and Rentals Co., Inc. [“H & R”] was hired to provide a crane and an operator, and thus became Teitelbaum’s subcontractor. H & R did not have the type of crane needed, and so it contacted Construction Equipment International, Inc. [“CEI”], and executed a short term lease with CEI for the use of the crane. CEI delivered the crane to Fisher Island.
The evidence as to how the crane’s location was chosen was in dispute. There was evidence presented that Turner Construction had been asked to clear a site inside the construction site in order to set up the crane, but that Turner Construction had refused. The crane was positioned just outside the construction area, alongside a wooden fence. It was positioned partially on a grassy/sandy area and partially on *504 the road. The outriggers, which are beams used to stabilize the crane, were not fully extended, and two of the pods were positioned in sand. Ordinarily, plywood pads are placed underneath the pods when in sand, to prevent the outriggers from sinking. However, on the day of the accident no plywood pads were available and this was not done.
H & R sent its employee, Joe Abbot, to operate the crane. Abbot had been employed by H & R for two and one-half years as a crane operator. He had never operated this particular model of crane provided by CEI. H & R gave Abbot the crane manual, but did not provide him with any training or instruction on the use of the crane, in violation of OSHA regulations. Abbot’s failure to extend the outriggers did not conform to industry standards, and was in violation of the warnings in the manual and in the crane, and OSHA regulations.
The crane and Abbot were under the control of the contractor, Teitelbaum. On the day of the accident, Abbot was being directed by a signal man who was a Teitel-baum employee. Teitelbaum had instructed Abbot to use the crane to move and stand on end large metal and plywood devices into which concrete is poured to form the concrete structure. Abbot received a hand signal from a Teitelbaum employee, and began to lift and set the forms. After releasing the fourth form, the outrigger pods began to sink in the sand, and the crane started to come up on its side. Abbot shouted a warning, and the crane toppled completely over.
Bennett McClary, an employee of the electrical contractor on the site, Daniel Electric, was struck in the back of the head by the crane boom as it fell. Even though he was wearing a hard hat, the impact shattered his skull killing him instantly. Bennett had a wife, Cheryl, and three year old daughter, Kaylee.
Northern Trust Bank, as personal representative of Bennett’s estate, and on behalf of Bennett’s widow and daughter, brought this wrongful death action against Teitelbaum, H & R and CEI. Prior to trial, CEI filed a third-party complaint for indemnity against Turner Construction. Because the third-party aspect of this litigation could not be brought to issue within the time for the scheduled trial, it was severed, and the original parties proceeded to trial.
At the close of Northern Trust’s case, all parties moved for a directed verdict. The trial court granted CEI’s motion, both as to active negligence and vicarious liability.
The trial court correctly entered a directed verdict in favor of CEI on the issue of vicarious liability. The crane in this case does not fall within the dangerous instrumentality doctrine because the crane was in use for construction, did not pose a sufficient danger to the public, was generally fenced and not exposed to the general public, and was not used as a motor vehicle or commonly found on the highways at the time of the accident.
The doctrine that governs the facts surrounding the use of the crane involved' in this case is the “inherently dangerous activity” doctrine. See Channell v. Musselman Steel Fabricators, Inc., 224 So.2d 320 (Fla.1969). Accordingly, the person responsible for the dangerous activity is held to be vicariously liable. This doctrine is to be distinguished from the “dangerous instrumentality” doctrine under which the owner of the instrumentality is held to be vicariously liable. See Southern Cotton Oil Company v. Anderson, 80 Fla. 441, 86 So. 629 (Fla.1920).
The trial court also correctly entered a directed verdict in favor of CEI on the issue of active negligence because the facts do not establish a causal connection between CEI and the accident. The proximate cause of the accident was Abbot’s failure to extend the outriggers. There was no evidence that CEI had a policy of sending a representative with the crane operator and there was no evidence offered to prove CEI violated any rule amounting to a standard of care from which negligence could be inferred.
As far as all of the other arguments made for reversal are concerned, we are unpursuaded. Accordingly, the judgment *505 of the trial court is, in all respects, affirmed.
Affirmed.