LABARGA, J.
James Earl Rippy seeks review of the decision of the First District Court of Appeal in Rippy v. Shepard, 15 So.3d 921 (Fla. 1st DCA 2009), which held that a farm tractor is not a dangerous instrumentality as a matter of law. In so holding, *306 the district court rejected Rippy’s contentions that, because a farm tractor is a motor vehicle and because it is of such size and character as to be peculiarly dangerous in its operation, a farm tractor is a dangerous instrumentality. The First District’s opinion conflicts with our precedent set forth in Meister v. Fisher, 462 So.2d 1071, 1072 (Fla.1984), where we held that the dangerous instrumentality doctrine can apply to motor vehicles other than automobiles that have the ability to cause serious injury, and Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 636 (1920), where we concluded that the weight, speed, and mechanism of an automobile or motor vehicle make it peculiarly dangerous when in operation. We have jurisdiction based on the misapplication of these decisions. See art. V, § 3(b)(3), Fla. Const.; see also Wallace v. Dean, 3 So.3d 1035, 1040 (Fla.2009) (identifying misapplication of decisions as a basis for express and direct conflict jurisdiction under article V, section 3(b)(3)). As we will explain more fully below, we conclude that a farm tractor is a dangerous instrumentality. Accordingly, we quash the decision of the First District in Rippy. We begin our discussion with an overview of the facts and procedural history of this case.
FACTS AND PROCEDURAL HISTORY
Petitioner James Earl Rippy sued Respondent James Shepard under the dangerous instrumentality doctrine after sustaining injuries caused by Shepard’s farm tractor on December 16, 2004. Shepard subsequently moved to dismiss Rippy’s amended complaint. The trial court granted Shepard’s motion and dismissed the amended complaint with prejudice, finding that a farm tractor is not a dangerous instrumentality under Florida law and that the complaint thus failed to state a cause of action against Shepard.
On appeal, the First District also held that a farm tractor is not a dangerous instrumentality. Rippy, 15 So.3d at 923. In so holding, the First District rejected Rippy’s contention that, because the Legislature defines a farm tractor as a “motor vehicle” and regulates its use, a farm tractor is a dangerous instrumentality. Id. at 922. The district court also rejected Rip-py’s assertion that, because “it is of such size and character as to be peculiarly dangerous in its operation,” a farm tractor is a dangerous instrumentality. Id. at 923. Rippy now challenges the district court’s ruling.
ANALYSIS
The parties in this case dispute whether a farm tractor is a dangerous instrumentality. The issue presents a pure question of law and is thus subject to this Court’s de novo review. See D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (stating that pure questions of law are reviewed de novo).
Generally speaking, Florida’s dangerous instrumentality doctrine imposes “vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another.” Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (citing S. Cotton Oil Co., 86 So. at 637). The doctrine applies to any “instrumentality of known qualities [that] is so peculiarly dangerous in its operation” as to justify application of this common law principle. S. Cotton Oil Co., 86 So. at 638 (on petition for rehearing).
The dangerous instrumentality doctrine is an old and well-settled rule that can be traced back to English common law. Early in its development, the doctrine applied to objects that “common knowledge and common experience proved to be ... po *307 tent sources of danger.” Id. at 631. We first applied the doctrine to automobiles in Southern Cotton Oil Co., where we noted:
[Ojne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.
Id. at 638 (on petition for rehearing). “The liability grows out of the obligation of the owner to have the vehicle, that is not inherently dangerous per se but peculiarly dangerous in its use, properly operated when it is by his authority on the public highway.” Id. at 632 (quoting Anderson v. S. Cotton Oil Co., 73 Fla. 432, 74 So. 975, 978 (1917)).
We have previously explained the purpose and premise of the dangerous instrumentality doctrine as follows:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.
Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990). The doctrine is based on “the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent.” Meister, 462 So.2d at 1072 (emphasis omitted) (quoting Jordan v. Kelson, 299 So.2d 109, 111 (Fla. 4th DCA 1974)).
When we first applied the dangerous instrumentality doctrine to an automobile in Southern Cotton Oil Co., we examined at length the dangerous character of the automobile as operated on the public highways. S. Cotton Oil Co., 86 So. at 631-33. In his concurring opinion, which the majority adopted, Justice Whitfield observed:
The automobile or motor vehicle is an instrumentality of service, whose weight, speed, and mechanism make it peculiarly dangerous when in operation on public highways.
Among the principles of the common law, that are designed to conserve the public safety, are those that require the exercise of due care in the use on the public highways of instrumentalities that are peculiarly dangerous in their operation, and impose upon the owner of such an instrumentality liability to persons for injuries to them proximately caused by the negligent use of the instrumentality upon the public highways by any one who has the authority or permission of the owner to use or operate it. These principles are applicable to the use of any instrumentality that may be produced by human skill, which materially increases the hazards of travel upon the public highways....
S. Cotton Oil Co., 86 So. at 636 (Whitfield, J., concurring). Importantly, we have since held that the dangerous instrumentality doctrine is not limited to motor vehicles being operated on a public highway and may apply to a motor vehicle operated on private property. See Meister, 462 So.2d at 1073.
Subsequent to our decision in Southern Cotton Oil Co., Florida courts have extended the doctrine to golf carts, trucks, buses, airplanes, tow-motors, and other motorized vehicles. See, e.g., Meister, 462 So.2d at 1071 (golf carts); see also id. at 1072 (recognizing trucks and buses *308 as dangerous instrumentalities); Orefice v. Albert, 237 So.2d 142, 145 (Fla.1970) (airplanes); Eagle Stevedores, Inc. v. Thomas, 145 So.2d 551, 552 (Fla. 3d DCA 1962) (tow-motors). We are now asked to consider whether the dangerous instrumentality doctrine applies to farm tractors. For the reasons that follow, we hold that it does.
A primary factor in determining whether an object is a dangerous instrumentality is whether the object at issue is a motor vehicle. See, e.g., Meister, 462 So.2d at 1072. Clearly, a farm tractor is a motor vehicle as it has been defined as such by the Legislature. For instance, section 316.003(12), Florida Statutes (2004), defines a farm tractor as “[a]ny motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines, and other implements of husbandry.” The Legislature also refers to a farm tractor as a motor vehicle in section 322.01(19), Florida Statutes (2004). Additionally, the Legislature has enacted regulations to ensure the safe operation of farm tractors. For instance, the Legislature requires farm tractors manufactured or assembled after January 1, 1972, to be equipped with “vehicular hazard-warning lights visible from a distance of not less than 1,000 feet to the front and rear in normal sunlight” whenever operated on a highway. § 316.2295(1), Fla. Stat. (2004). Such farm tractors are generally required to be equipped with slow-moving vehicle emblems, as well as lamps and reflectors that meet certain specifications. § 316.2295(2), (5), Fla. Stat. (2004).
The dissent expresses concern that our decision expands the dangerous instrumentality doctrine beyond its original intent, which was to address harm to the public arising from the negligent use of an instrumentality that is peculiarly dangerous in its operation during its primary, rather than occasional, use. Dissenting op. at 309-10. The dissent is correct that no one test is determinative of whether an instrumentality is dangerous. However, the contention in the dissent that this Court’s ruling in Meister — that a golf cart is a dangerous instrumentality — “sets the bar” low, see dissenting op. at 312, and the resulting implication that this has become the one touchstone by which all other in-strumentalities are measured, is incorrect. Further, one point of significance in our decision in Meister is that we clearly held that the fact “[t]hat the vehicle is being operated on the public highways of this state is likewise not required before the dangerous instrumentality doctrine can come into play.” Meister, 462 So.2d at 1073. We quoted with approval in Meister from the decision of the Fourth District Court of Appeal in Reid v. Associated Engineering of Osceola, Inc., 295 So.2d 125 (Fla. 4th DCA 1974), where that court stated:
We see neither reason nor logic in the view that a motor vehicle in operation, which is a dangerous instrumentality while being operated upon the public highway, somehow ceases to be a dangerous instrumentality the instant the driver causes it to turn off the public street or highway and onto a private drive or other private property. Although it is most probable that a motor vehicle being operated on private property would be moving at a slower speed than one being operated upon the public street or highway, common sense tells us that in all other respects such vehicle while in motion is equally dangerous to persons and, property no matter where it is operated, and to make the owner’s liability for his permittee’s negligence in the operation of such vehicle depend upon whether the vehicle is on or off the public highway simply leads to absurd results.
*309 Meister, 462 So.2d at 1073 (quoting Reid, 295 So.2d at 129) (emphasis added).
This same logic leads to the inescapable conclusion that even though a tractor is most commonly operated on farm property, it is not solely operated in that context. Tractors are also operated in road right-of-way maintenance, commercial landscaping, and in construction settings. It is an instrumentality often seen on public highways and rights-of-way, performing these varied services. Moreover, it is common knowledge that tractors vary in size but are often powerful vehicles of such size and speed that wherever they are operated, they can be dangerous to those persons who come into contact with them. Just as we said in Meister that “a golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway,” Meister, 462 So.2d at 1073, it can be said that a tractor when negligently operated on private property has the same ability to cause serious injury as does any motor vehicle operated on a public highway. Our decision today is in accord with these criteria and is not based, as the dissent suggests, simply on “a comparison between the device at issue and a golf cart.” Dissenting op. at 312.
Based on “common knowledge and common experience,” there is no doubt that a farm tractor is peculiarly dangerous in its operation so as to justify the imposition of vicarious liability. See S. Cotton Oil Co., 86 So. at 631, 638. The weight, speed, and mechanism of farm tractors render their negligent use peculiarly dangerous to others. Furthermore, farm tractors frequently operate along state roads and other public areas, thereby subjecting the public to danger of injury. Cf. Harding v. Allen-Laux, Inc., 559 So.2d 107, 108 (Fla. 2d DCA 1990) (holding that a forklift that was often operated along the edge of a state road was a dangerous instrumentality under the facts of the case). Accordingly, given their “potent source of danger,” there can be no question that a farm tractor is an instrumentality that materially increases the hazards of travel. Id. at 631, 636. We therefore hold that a farm tractor is a dangerous instrumentality as a matter of law.
Based on the foregoing, we quash the decision of the First District Court of Appeal in Rippy v. Shepard, 15 So.3d 921 (Fla. 1st DCA 2009), and remand the case to the First District for proceedings consistent herewith.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., concurs.