NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTHONY NEWTON,                                )
                                               )
            Appellant,                         )
                                               )
v.                                             )          Case No. 2D15-2927
                                               )
CATERPILLAR FINANCIAL SERVICES                 )
CORPORATION; JOSHUA CRAM, an                   )
individual; CHARLES CRAM, an                   )
individual; and C&J BOBCAT AND                 )
HAULING, LLC, a Florida limited                )
liability company,                             )
                                               )
            Appellees.                         )
_____)

Opinion filed December 14, 2016.

Appeal from the Circuit Court for Pinellas
County; Thomas H. Minkoff, Judge.

Thomas J. Seider and Steven L. Brannock
of Brannock & Humphries, Tampa; and T.
Patton Youngblood, Jr., of Youngblood Law
Firm, St. Petersburg, for Appellant.

Sarah Lahlou-Amine of Buchanan, Ingersoll
& Rooney PC, Tampa; Hala A. Sandridge
of Buchanan, Ingersoll & Rooney PC,
Tampa (substituted as counsel of record);
and Blake J. Delaney and Sundeep B. Nath
of Buchanan, Ingersoll & Rooney PC,
Tampa, for Appellee Caterpillar Financial
Services Corporation.

No appearance for remaining Appellees.

KHOUZAM, Judge.

Anthony Newton appeals the final summary judgment entered in favor of Caterpillar Financial Services. Because the piece of machinery that caused injuries to Newton is not a dangerous instrumentality, we affirm.

Newton was hired as an independent contractor by C&J Bobcat and Hauling, LLC, to assist its agent, Charles Cram, in clearing debris off a private lot in a residential area. Cram and Newton used a Bobcat model 257B3 loader to assist in clearing the lot. C&J did not own the Bobcat 257B3 loader; rather, it leased it from Caterpillar Financial Services. The loader was transported in a box trailer to the residential property by Cram. Once he arrived on the lot, Cram disencumbered the trailer and briefly drove the loader on the street before driving it onto the private lot. Cram and Newton used the loader to dump the debris they cleared from the lot into a box trailer for disposal. At one point, the two were trying to move a tree stump into the box trailer. Cram was driving the loader, carrying the tree stump in its bucket. He asked Newton to get inside the trailer to pack down the debris that filled the trailer. While Newton was inside the trailer, making room for additional debris, Cram released the tree stump. Newton tried to warn Cram that he was still in the trailer, but his voice could not be heard. He tried to climb over the wall of the box trailer, but the tree stump dropped from the loader's bucket and rolled back onto Newton's hand, severing his middle finger.

Newton filed suit against Caterpillar, alleging that it was liable for the injuries he sustained from Cram's negligent operation of the loader because the loader

was a dangerous instrumentality.[1]  Newton and Caterpillar filed motions for summary judgment disputing whether the loader was a dangerous instrumentality.  The motions were each accompanied by expert affidavits.  The trial court heard legal arguments from both parties and found that the loader was not a dangerous instrumentality.  It entered judgment in favor of Caterpillar.

Whether the loader in this case is a dangerous instrumentality presents a pure question of law that this court reviews de novo.  See Rippy v. Shepard, 80 So. 3d 305, 306 (Fla. 2012).  The doctrine imposes vicarious liability on the owner of an " 'instrumentality of known qualities [that] is so peculiarly dangerous in its operation' as to justify application" of the doctrine.  Id. (quoting S. Cotton Oil Co. v. Anderson, 86 So. 629, 638 (Fla. 1920) (on petition for rehearing)).  In deciding whether something is a dangerous instrumentality, courts consider a number of factors.  "A primary factor in determining whether an object is a dangerous instrumentality is whether the object at issue is a motor vehicle."  Id. at 308.  Courts also evaluate the extent to which an object is regulated because legislative regulation is a recognition of the danger posed by the use of the evaluated instrumentality.  See S. Cotton Oil Co., 86 So. at 634 ("It is idle to say that the Legislature imposed all these restraints, regulations, and restrictions upon the use of automobiles, if they were not dangerous agencies which the Legislature felt it was its duty to regulate and restrain for the protection of the public.").  Another factor is the relative danger posed by the instrumentality.  See id. at 633; Festival Fun Parks, LLC v. Gooch, 904 So. 2d 542, 546 (Fla. 4th DCA 2005) (noting that accidents involving

---

[1]Newton did not name Cram or C&J as defendants in his complaint. However, Caterpillar filed a third-party complaint against Cram, his brother, and C&J, seeking indemnification and alleging breach of contract.  The third-party complaint alleged that Cram and his brother owned C&J.

go-karts causing serious injury were "pretty rare").  The physical characteristics of the object are also pertinent to the dangerous instrumentality inquiry.  See Rippy, 80 So. 3d at 309; Harding v. Allen-Laux, Inc., 559 So. 2d 107, 108 (Fla. 2d DCA 1990) (describing a forklift as a "large[], four-wheel vehicle with protruding steel tusks").  Courts also consider whether the instrumentality at issue is operated in close proximity to the public.  Compare Harding, 559 So. 2d at 108 (considering forklift involved in accident with a motor vehicle on public highway), with Canull v. Hodges, 584 So. 2d 1095, 1097 (Fla. 1st DCA 1991) ("The road grader we are asked to classify as a dangerous instrumentality was not licensed or regulated and was operating on an airport construction site and its operator was apparently a fellow employee of the plaintiff." (emphasis added)).  No single factor is determinative of the inquiry, and this list of factors is not exhaustive.  Rather, these factors exist to assist courts in determining whether an application of the dangerous instrumentality doctrine is justified.  See Harding, 559 So. 2d at 108.

With this framework in mind, we return to the evidence reviewed by the trial court.  Caterpillar's expert, Ron Reinholdt, provided an affidavit in support of Caterpillar's summary judgment motion.  He noted that the loader was equipped with a continuous rubber track which was designed for use off road or on unimproved surfaces.  He emphasized that the loader was not designed to be primarily operated on roads and that the loader was not routinely operated on public highways, rights-of-way, golf courses, or other improved surfaces.  Additionally, Reinholdt's affidavit provided that Caterpillar maintained databases containing information about reported accidents and litigation.  The databases revealed that there were seventeen total accidents

- 4 -

reported to Caterpillar involving the 13,326 model 257 loaders sold or leased by Caterpillar. Ten of those accidents involved injury to the operator of the Caterpillar, three involved injury to a technician servicing the loader, and four involved injury to third parties. Only two of the incidents involving third parties resulted in serious injury. Based on these statistics, Reinholdt concluded that the general rate of incident was one in every 783 units and that the rate of incident to third parties was one in every 3331 units. He calculated that one third party is injured for every 1102 years of continuous loader operation.

Newton's expert, George Kremer, focused on the physical characteristics of the loader and its potential to cause harm. He opined that the loader was a dangerous instrumentality based on the following: The loader weighed 8000 pounds and had a maximum speed of 7.1 miles per hour. The loader was also capable of lifting 2300 pounds to heights of approximately 9.5 feet. The design of the loader, according to Kremer, also restricted the operator's visibility. Finally, the loader's rotational speed was such that it posed a danger to bystanders in its vicinity. Kremer conducted an analysis of other instrumentalities held to be "dangerous," comparing the momentum of those instrumentalities to the loader. He found that the loader's potential momentum placed it within a range of momentums associated with other dangerous instrumentalities.

During argument on the summary judgment motions, Newton's counsel reiterated the findings of plaintiff's expert, compared the loader to other machinery previously held to be dangerous instrumentalities, and cited warnings in the loader's manual to emphasize its potential for danger. Newton also suggested that the loader

was classified as special mobile equipment under section 316.003(48), Florida Statutes (2013). He argued, based on common knowledge and experience, that loaders of this type are frequently used in proximity to the public. Caterpillar's trial counsel relied on the affidavit furnished from its expert and distinguished the cases cited by Newton. He went on to argue that considering all of the factors identified by case law, the loader was not a dangerous instrumentality.

We hold that the Bobcat model 257B3 loader that caused Newton's injury is not a dangerous instrumentality. A primary factor in our inquiry is whether the loader is an automobile. See Rippy, 80 So. 3d at 308. The loader is not an automobile under Florida law. Rather, it is best classified as "[s]pecial mobile equipment," which is defined as "[a]ny vehicle not designed or used primarily for the transportation of persons or property and only incidentally operated or moved over a highway, including, but not limited to . . . bucket loaders." § 316.003(48). Applied here, the loader's ability to transport persons or property is incidental to its primary construction and industrial functions. See § 320.01(1)(a), Fla. Stat. (2013) (excluding special mobile equipment from the definition of motor vehicle); M.J.S. v. State, 453 So. 2d 870, 871 (Fla. 2d DCA 1984) ("[T]he legislature does not consider vehicles for construction use to be 'motor vehicles' as they have assigned such vehicles to a 'special' category."). The loader does not "transport persons or property" on "the roads of this state." See § 320.01(1)(a) (defining motor vehicle). Rather, the loader itself is transported from job site to job site

by C&J because the loader was not designed to be primarily operated on public highways.[2]

Newton argues that this court's decision in <u>Harding</u> requires this court to find that the loader is an automobile and a dangerous instrumentality. We reject this argument. In <u>Harding</u>, the plaintiffs were operating their car when they were involved in a collision with a forklift on a public highway. 559 So. 2d at 108. The trial court determined that the forklift was not a dangerous instrumentality but this court reversed. <u>Id.</u> This court reasoned that if a golf cart is a dangerous instrumentality, then surely the "larger, four-wheel[ed] vehicle with protruding steel tusks is liable under this doctrine for its operation <u>on a public highway</u>." <u>Id.</u> (emphasis added). This court further reasoned that while the forklift may be "special mobile equipment" for the purposes of chapter 316, the forklift was "still unquestionably a large vehicle powered by a motor and requiring skilled operation." <u>Id.</u> This court concluded that in determining whether something is a dangerous instrumentality

> the various definitions of "motor vehicle" within the Florida Statutes are not dispositive. The doctrine is not necessarily invoked by any statutory definition of motor vehicle. Instead, it is invoked by a judicial decision that "an instrumentality of known qualities is so peculiarly dangerous in its operation as to" justify the doctrine.

<u>Id.</u> (quoting <u>S. Cotton Oil Co.</u>, 86 So. at 638).

---

[2]Citing a section of the loader's manual on "roading" the loader, Newton argues that the loader should be considered a motor vehicle. The manual provides that the loader may be equipped with tires and modified to drive on the road. We reject this argument because our analysis should focus on the loader as equipped, not as it could be modified. <u>See</u> <u>Foster v. Lee</u>, 226 So. 2d 282, 283 (Fla. 2d DCA 1969) (holding that a trailer by itself is not a dangerous instrumentality and reasoning that modifying the trailer by attaching a tractor to pull it created a "new vehicle").

Harding does not control this case, nor does it mandate that we find that the loader is an automobile. The Harding court did not hold that the forklift was a motor vehicle. Rather, Harding stands for the proposition that the "various definitions of 'motor vehicle' within the Florida Statutes are not dispositive" as to whether something is a dangerous instrumentality. Id. The court in Harding was presented with a different situation than present here. In Harding, the forklift was operated on a public highway and collided with an automobile driven by a member of the public. Id. Here, the accident occurred on a private lot, and the injured party was not a member of the unsuspecting public.

Next, we consider the extent to which the loader is regulated. Newton cites several statutes in arguing that the loader is heavily regulated. However, we do not find that these statutes apply to the loader. As special mobile equipment, the loader is exempt from some regulations designed for motor vehicles operating on highways. See, e.g., § 316.261(1), (3)(e). Additionally, many of the statutes would only apply to the loader if it were operated on a public highway. See §§ 316.217(1) (imposing headlight requirements for "[e]very vehicle operated upon a highway within this state" (emphasis added)); .535(1) ("The gross weight imposed on the highway by the wheels of any one axle of a vehicle shall not exceed 20,000 pounds." (emphasis added)); .614(3)(a) (defining "motor vehicle" for purpose of seat belt regulation as a "vehicle as defined in s. 316.003 which is operated on the roadways, streets, and highways of this state" (emphasis added)). Accordingly, the loader is not substantially regulated.

Further, we consider the relative danger posed by the loader. According to Caterpillar's expert, Ron Reinholdt, accidents involving injury are exceedingly rare—

accidents involving injury to third parties only occur once every 1102 years of continuous loader operation. There is no record evidence to otherwise suggest that the loader has a high accident rate. Additionally, the type of injury in this case favors a finding that the loader is not a dangerous instrumentality. According to Caterpillar's databases, most incidents involved injury to the operator of the loader. Accidents involving third parties were even rarer than injuries to service technicians. The accident occurring in this case and the evidence of other accidents are not akin to the type of accidents caused by the operation of motor vehicles. See Meister v. Fisher, 462 So. 2d 1071, 1073 (Fla. 1984) ("[A] golf cart when negligently operated on a golf course, has the same ability to cause serious injury as does any motor vehicle operated on a public highway."); Harding, 559 So. 2d at 108 (holding that a forklift is a dangerous instrumentality where it was involved in a collision with an automobile). Thus, the relative danger posed by the instrumentality is low.

It is true that an instrumentality such as a crane that lifts heavy objects can be considered a dangerous instrumentality. See Scott & Jobalia Const. Co. v. Halifax Paving, Inc. ex rel. U.S. Fid. & Guar. Co., 538 So. 2d 76, 79 (Fla. 5th DCA 1989), opinion approved of sub nom. Halifax Paving, Inc. v. Scott & Jobalia Const. Co., 565 So. 2d 1346 (Fla. 1990). And it has been argued in this case that the loader is inherently dangerous due to its ability to lift heavy loads. However, the loader's nine-foot lifting capacity is far shy of that of a crane. See Scott & Jobalia Const. Co., 538 So. 2d at 78 ("[F]rom twenty-five feet up, a forty-foot section of pipe fell out of the sling." (emphasis added)). Simply that an instrumentality may have the potential to cause severe harm by dropping a load it has lifted is insufficient to find it is a dangerous

instrumentality—all the factors must be considered.  See N. Trust Bank of Fla., N.A. v. Constr. Equip. Int'l, Inc., 587 So. 2d 502, 504 (Fla. 3d DCA 1991) ("The crane in *this* case does not fall within the dangerous instrumentality doctrine because the crane was in use for construction, did not pose a sufficient danger to the public, was generally fenced and not exposed to the general public, and was not used as a motor vehicle or commonly found on the highways at the time of the accident.").

Finally, there is no evidence in the record establishing that the loader was operated in close proximity to the public routinely or at the time of the accident.  While Newton's counsel argued that similar loaders are "everywhere," the arguments of counsel are not evidence.  See Collins Fruit Co. v. Giglio, 184 So. 2d 447, 449 (Fla. 2d DCA 1966) ("[I]t is axiomatic that the arguments of counsel are not evidence.").  There was no evidence presented that these loaders were routinely operated in close proximity to the public.  Additionally, the facts of this case do not show that this loader was operated in proximity to the public.  The accident occurred on a private lot, and the injured party was an independent contractor hired to assist with the job.  See Canull, 584 So. 2d at 1097 (affirming trial court's determination that road grader was not a dangerous instrumentality where a fellow employee was injured on an airport construction site); N. Trust Bank of Fla., N.A., 587 So. 2d at 504.  Thus, there is no evidence that the public is sufficiently exposed to loaders of this type as to justify application of vicarious liability.

We do recognize that based on its physical characteristics the loader has the potential to cause serious injury.  It weighs over 8000 pounds and can lift a one-ton load nine feet into the air.  Although it has a low rate of speed, its sheer size and weight

give it the ability to generate a substantial amount of momentum. It is beyond question that the loader is a serious piece of machinery with the capacity to do great harm. However, the physical characteristics of the loader constitute only one of the factors to consider in determining whether a piece of machinery is a dangerous instrumentality.

Accordingly, after thorough consideration of the pertinent factors, we affirm the trial court's determination that the loader is not a dangerous instrumentality.

Affirmed.

CASANUEVA and SLEET, JJ., Concur.