235 So.2d 14 (1970)
John W. MARTIN, Appellant,
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, a Foreign Insurance Corporation, Appellee.
No. 69-330.
District Court of Appeal of Florida, Second District.
May 6, 1970.
*15 Walter R. Mattson, Lakeland, for appellant.
David J. Williams of Langston & Massey, Lakeland, for appellee.
LILES, Acting Chief Judge.
On March 23, 1967, appellant secured from appellee, defendant below, a family automobile and comprehensive liability policy. The automobile liability insurance covered one car owned by appellant, a 1963 Dodge. The following clause in the policy governed coverage of subsequently acquired automobiles:
"`owned automobile' means * * *.
(c) a private passenger, farm or utility automobile ownership of which is acquired by the Named Insured during the policy period, provided * * *.
(2) the Company insures all private passenger, farm and utility automobiles owned by the Named Insured on the date of such acquisition and the Named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile * * *.
(d) * * *
`private passenger automobile' means a four wheel private passenger station wagon or jeep type automobile;
`farm automobile' means an automobile of a truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming;
`utility automobile' means an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes. * * *"
In early spring of 1967, appellant traded a dog for a frame and drive train of a jeep. Subsequent barters produced enough parts to construct a moveable vehicle that appellant drove around the pasture, but not on public highways. Sensing a potential trade, appellant purchased a license plate for the "jeep" and traded it for a 1953 Ford pickup truck. On October 27, 1967, eight days after the trade, appellant was involved in an accident with Sharon Geisler Composky. Appellant sued. Mrs. Composky counterclaimed. Appellant demanded that appellee-insuror provided a defense to Composky's counterclaim. Appellee refused, and appellant brought this action for a declaratory judgment to determine appellee's obligation under the policy.
*16 The trial judge, sitting without a jury, found that the "jeep," although "inoperable" and "not road operable," was nevertheless an automobile within the contract provision set forth above. The court cited Williams v. Standard Accident Insurance Company, 1958, 158 Cal. App.2d 506, 322 P.2d 1026 in support of this conclusion. Since the "jeep" had not been insured with appellee, the court reasoned that the truck acquired by appellant was not a replacement of an insured vehicle, and the truck was not acquired at a time when all of appellant's automobiles were insured by appellee. Thus appellee insurance company was held not liable to appellant under the policy.
Appellant was the only witness testifying in the trial below. He stated that the "jeep" was not operable on the highways due to lack of rear brakes and other major deficiencies; that his use of the vehicle was restricted to pastureland; that it was transported to its purchaser by trailer and by towing; and that the purchaser has since used it to herd cattle on farmland. The trial judge must have believed appellant's testimony, for he found the vehicle to be "inoperable," and "never road operable." Thus there is no question of a factual nature before us. The sole issue we are called on to decide is whether the "jeep" built by appellant, which was not intended to be road operable and was not so operated, is an "automobile" within the meaning of the provision of the insurance contract set forth above.
Both parties agree, and our research confirms, that there is no Florida case on point. Appellant's urge that Glens Falls Insurance Company v. Gray, 5th Cir.1967, 386 F.2d 520, applying what the federal court found to be Florida's position on the matter, should govern. Appellee finds Williams v. Standard Accident Insurance Company, supra, upon which the trial court relied, to state the better position. However, both parties have been admirably astute in distinguishing the precedent cited by their opponents from the facts presented herein. Thus we are faced with a problem of first impression.
The point of departure in cases of this nature must be the contract itself. Turning to the provisions set forth above, it is clear that "automobile" is not used in the generic sense, as it is prefaced with the terms "private passenger," "farm" and "utility," which in turn are further defined in the later provision above. Thus the cases construing "automobile" to include vehicles as dissimilar as tractors and fork lifts are not applicable. See, e.g., National Casualty Company v. Thompson, 1957, 39 Ala.App. 199, 96 So.2d 708, and cases cited therein. Proceeding from the standpoint that insurance contracts should receive a construction that is practical, reasonable and just, Allison v. Imperial Casualty & Indemnity Company, Fla.App. 1969, 222 So.2d 254, 256, we turn to an examination of the specific governing sections of the contract.
Reading the definitions of "private passenger automobile," "farm automobile," and "utility automobile" reveals an element, albeit implicit, common to each. A station wagon, a jeep, and trucks of the pick-up, panel and farm type, have as an inherent design characteristic the capacity to be driven legally and safely on public highways. The facts herein reveal that this was lacking in appellant's "jeep." Unlike the situation where an automobile is rebuilt, or undergoes major repairs or is inoperable because of the temporary absence of an essential component, here the "jeep" was, to use the vernacular, virtually built from scratch. What appellant evidently had in mind was the construction of a vehicle that would be of some use on a farm, or simply of enjoyment to drive in a pasture. Appellant did not design the vehicle to be driven on public roads, and the record demonstrates that it was not driven on the road. These facts clearly give rise to the conclusion that appellant's formerly owned "jeep" was not an "automobile" within the meaning of the express terms of the contract.
*17 This reading of the terms of the contract is supported by the purpose underlying inclusion of such "automatic insurance" provisions in automobile liability insurance contracts. First, they are intended to meet the need for maintaining coverage in light of the recognized custom of automobile owners of acquiring additional automobiles by purchase or trade during the life of their policies. Coverage is provided for the newly acquired car at the earliest time the insured needs protection. See 12 Couch on Insurance p. 235. As such, the provision is for the benefit of the insured, and is meant to broaden rather than to restrict coverage. Michel v. Aetna Casualty & Surety Company, 10th Cir.1958, 252 F.2d 40, 42; Cook v. Suburban Casualty Company, 1964, 54 Ill. App.2d 190, 203 N.E.2d 748, 751; 34 A.L.R.2d 939 and annotations therein; 7 Blashfield, Automobile Law & Practice, p. 662. Secondly, they prevent double recovery on the part of the insured when the insured owns two or more automobiles, each insured with a different company, and replaces one with a newly acquired automobile. See Michel v. Aetna Casualty & Surety Company, supra. Finally, in the situation where there are two or more automobiles, each insured with a different company, and an additional automobile is acquired, it is apparent that such provisions will negate any coverage of the newly acquired automobiles by either insuror. The same result obtains when one automobile is insured but others are not at the time a new automobile is acquired. The additional vehicle is not a replacement, and all automobiles owned by the insured are not covered by one policy at the time the additional vehicle is obtained. Hence the only logical conclusion that can be drawn as to the purpose of the "automatic insurance" clause in this latter situation is that it is meant to induce the insured to purchase liability insurance on all owned automobiles from the company insuring the first.
While we wish to make clear that we cast no aspersions on a provision which operates to induce an insured to use one insurance company exclusively, we are unable to see how such considerations are pertinent to the facts of the case before us. The "jeep" owned by appellant was neither designed nor intended to be used on public highways, nor was any evidence adduced that it was in fact so used. Thus is is highly unlikely that an average, prudent person could be expected to purchase automobile liability insurance for such a vehicle in these circumstances. Cf. 7 Blashfield, Automobile Law & Practice, p. 662. This, of course, vitiates any reasons based on principles supporting inclusion of "automatic insurance" clauses for labeling appellant's "jeep" as an "automobile," although, as we have stated before, a fair reading of the express language of the contract itself compels the same result.
For the foregoing reasons the judgment appealed from is reversed, and the case remanded for action consistent with this opinion.
PIERCE and McNULTY, JJ., concur.