ECONOMY FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, *v.* DARYLL STEVENS *et al.*, Defendants—(DENISE A. GROVES, Adm'r of the Estate of Allen Edward Groves, Deceased, Defendant-Appellant).—(AETNA CASUALTY AND SURETY DIVISION, AETNA LIFE AND CASUALTY COMPANY, Plaintiff-Appellee, *v.* DENISE A. GROVES *et al.*, Defendants— (DENISE A. GROVES, Indiv. and as Adm'r of the Estate of Allen Edward Groves, Deceased, Defendant-Appellant).)

Fifth District    No. 80-520

Opinion filed September 8, 1981.

Harris, Lambert and Wilson, of Marion, for appellant.

James B. Bleyer, of Marion, for appellee Aetna Casualty and Surety Division, Aetna Life and Casualty Co.

Mitchell & Armstrong, Ltd., of Marion, for appellee Economy Fire and Casualty Company.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Denise A. Groves, as administrator of the estate of Allen Edward Groves, appeals two summary judgments entered against the estate by the circuit court of Williamson County in a consolidated proceeding. In the first action Economy Fire and Casualty Co. (Economy) was granted a declaratory judgment holding that an automobile liability policy issued by it to defendants, Daryll Stevens and Deborah Kay Stevens, afforded no liability coverage for the fatal injuries suffered by Edward Groves while a passenger in Stevens' dune buggy. In the second action, Aetna Casualty and Surety Division, Aetna Life and Casualty Co. (Aetna), was granted a declaratory judgment holding that the uninsured motorist coverage of its automobile liability policy issued to decedent

provided no coverage for the fatal injuries he sustained while riding in Stevens' dune buggy.

The vehicle in question in this case cannot accurately be assigned a descriptive noun. For reference purposes we will use the term utilized by the parties and call it a dune buggy. A full description of the vehicle is in the record and will be set forth.

The facts involved in this case are undisputed and relatively simple. On September 1, 1975, decedent was riding as a passenger in a dune buggy owned and operated by Daryll Stevens in an abandoned strip mine. While travelling up a spoil bank the vehicle stalled and began to roll backwards. After rolling backwards a short distance the vehicle over-turned and decedent sustained fatal injuries. The administrator of decedent's estate commenced an action for wrongful death against Mr. Stevens, insured by Economy, and made a claim against Aetna Insurance Company upon the uninsured motorist clause of a policy it had issued to decedent. That case and that claim resulted in these summary judgment actions by Economy and Aetna.

The hearing on the consolidated complaints was had on April 29, 1980, and by stipulation the only evidence offered was the discovery deposition of Daryll Stevens. Stevens stated that the vehicle was home-made, and that he had purchased it from a Volkswagen mechanic for $500 only two weeks before the fatal mishap. He described the vehicle as being built upon a Volkswagen frame and containing a Volkswagen engine. It was the same as a regular Volkswagen automobile except that it did not have windows, body or top. A rollbar replaced the top. It had four forward gears and one gear for reverse. There was a normal steering wheel, gear shift and clutch. The vehicle had two fiberglass bucket seats, seatbelts and shoulder harnesses. The length and width of the vehicle were about the same as a regular Volkswagen automobile, and the maximum speed it could attain was approximately 50 miles an hour. The vehicle had four regular automobile wheels and tires, foot brakes and a hand brake.

Stevens admitted that the vehicle lacked a speedometer, windshield and both headlights and taillights. He stated that he had bought the vehicle for recreational purposes and did not intend to use it for either farming or on the public highway. He had neither sought nor obtained a title or license from the Secretary of State. He admitted that he had crossed public highways with the vehicle and stated that the vehicle could be licensed if he added lights.

It was undisputed that since all of Stevens' automobiles were insured by Economy, his policy coverage would automatically extend to a newly purchased automobile so long as he notified Economy within 30 days of

the purchase. Stevens testified that he had intended to notify Economy within 30 days of the purchase and did in fact do so shortly after the accident and within the 30-day period. In view of that 30-day policy provision, and in view of the fact that Stevens did notify Economy, the issue for us to decide is whether the trial court properly ruled that the dune buggy was not an automobile within the meaning of Stevens' automobile liability policy.

Under the terms of the policy Stevens would be covered while driving an owned automobile. The policy defines the terms "automobile," "owned automobile" and "private passenger automobile" by the following language:

> " 'Automobile' whether used separately or in conjunction with other descriptive words shall not include any motored lift or floor truck of industrial type, or any motored cycle, cart, mower, midget automobile, or other midget type motor vehicle, whether commercially built or otherwise;

> 'owned automobile' means (a) a private passenger, farm, or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded, (b) a trailer owned by the named insured, (c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided (1) it replaces an owned automobile as defined in (a) above, or (2) the company insured all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or (d) a temporary substitute automobile;

> 'private passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile."

Under the terms of this policy, then, a dune buggy is neither expressly included within nor excluded from coverage. Thus, this court, as was the trial court, is confronted with an issue of construction. It has often been said that in construing a policy of insurance words are to be given their plain and ordinary meaning (*Johnson v. State Farm Mutual Automobile Insurance Co.* (1979), 78 Ill. App. 3d 144, 396 N.E.2d 1190), and the policy must be considered as a whole to ascertain the intent of the parties. (*Cook v. Suburban Casualty Co.* (1964), 54 Ill. App. 2d 190, 203 N.E.2d 748.) Those concepts are not easily applied in this case since the vehicle in question both has and lacks the attributes of an automobile. Seemingly, the only indication of the parties' intent in the policy transaction is provided by the inclusion of the 30-day automatic coverage clause. That

clause indicates the parties recognized the need for an automobile to be covered by liability protection from the moment of its purchase.

Although this is not a case in which the issues are easily resolved, this court previously has had an opportunity to consider many of the same issues in *State Farm Mutual Automobile Insurance Co. v. Pfannebecker* (1978), 64 Ill. App. 3d 582, 381 N.E.2d 796. In that case an insurance company brought a declaratory judgment action seeking to deny uninsured motorist benefits to its insured when she was injured as a passenger in a dune buggy. That case involved a policy provision which excluded from coverage any "land motor vehicle designed for use principally off public roads except while being used on public roads." There we affirmed a judgment for the insured holding that since the vehicle was licensed and titled for use on the public road it was a dual purpose vehicle for which insurance coverage was intended. In *Pfannebecker* we distinguished the factually similar case of *Kansas Farm Bureau Insurance Co. v. Cool* (1970), 205 Kan. 567, 471 P.2d 352, finding it unpersuasive with respect to the case at bar for several reasons. We noted that unlike the vehicle in *Cool*, the dune buggy in *Pfannebecker* was equipped with a speedometer, lights and horn and was licensable for use on the public road. We noted in *Pfannebecker* that the major difference between the cases was the structure of the vehicles.

> "It is evident that the dune buggy in which Pfannebecker had been injured was cosmetically similar to the vehicle in *Cool*. Both vehicles had no doors, fenders or roof nor did they have a hood or cowling over the motor. However, mechanically the vehicles were very dissimilar. The dune buggy chassis had not undergone a major modification like the chassis of the vehicle in *Cool*. * * * Thus, the most important distinction between the dune buggy and the vehicle in *Cool* was that only the dune buggy was licensed and titled for use upon public streets and roads. In *Cool* the court's holding that the vehicle was designed principally for off-road use and was not an automobile for purposes of uninsured motorist coverage was academic in the sense that the vehicle could not meet the requisite mechanical statutory specifications for use on public roads. Its very construction and design necessarily limited the vehicle to off-road use." 64 Ill. App. 3d 582, 584-85, 381 N.E.2d 796, 798.

The vehicle involved in the case at bar was similar to the vehicle involved in *Cool* in that neither vehicle could have been licensed at the times they were involved in accidents. However, the reasons why they could not have been licensed were vastly different. The vehicle in *Cool* had undergone a major modification of the chassis and apparently could

not have met the statutorily required structural standards for use on the open road. In contrast, the vehicle here was not unlicensable because of major structural deficiencies; rather, it would fail to meet licensing requirements merely because it needed lights and other cosmetic changes. In the absence of an express exclusionary clause, our holding in *Pfannebecker* would require that insurance coverage be afforded to a vehicle meeting licensing requirements. With a few minor changes the vehicle here would have been licensable, and thus is an "automobile" for purposes of the policy. In any event, we believe that the absence of a title and license for the dune buggy in question should not be controlling or even accorded great weight. Of more import in this case is whether the dune buggy *could be* titled and licensed. We have seen that with minor modifications, it could be.

The question then becomes whether the absence of cosmetic items, as we have described them, is sufficient to remove the vehicle from the category provided in the "automatic insurance" provision of the policy, that is, whether the vehicle is a "private passenger, farm or utility automobile." The absence of a few cosmetic items should not effect the classification of the need to afford coverage from the moment of purchase. We therefore conclude that the vehicle involved here was covered by Stevens' policy.

Economy has cited and relied upon the Florida case of *Martin v. Nationwide Mutual Fire Insurance Co.* (Fla. App. 1970), 235 So. 2d 14. It must be conceded that the vehicle and insurance policy provisions involved in that case are very similar to those of this case. Nevertheless, we believe the result we have reached to be the proper one, and we therefore respectfully decline to follow the *Martin* case.

Since we have decided that the dune buggy in question was included in the coverage of the Economy policy, we need not decide the issue of whether decedent's uninsured motorist clause would also afford protection.

Reversed.

WELCH and HARRISON, JJ., concur.