[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16561
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-24565-RSR

VERONICA BALDASSINI,
GABRIEL BALDASSINI,
SOL BALDASSINI,
SANTIAGO FIALLO,

Defendants-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 28, 2013)

Before CARNES, Chief Judge, WILSON and DALTON,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Roy Bale Dalton, Jr., United States District Judge for for the Middle District
of Florida, sitting by designation.

Santiago Fiallo, Veronica Baldassini, Gabriel Baldassini, and Sol Baldassini appeal the district court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Co.  They contend that the district court erred in determining that the State Farm automobile policy issued to Veronica and Gabriel Baldassini did not cover the bodily injuries that Fiallo suffered as a result of an accident involving a vehicle driven by Sol Baldassini.

I.

In 2010 fifteen-year-old Sol Baldassini was driving along the streets of the Village of Key Biscayne, Florida in a 2009 E-Z-GO ST Express, a four-wheel electric vehicle manufactured by Textron, Inc., the parent company of E-Z-GO. The vehicle's owners had left it in the care of the Baldassinis while away on a trip, and Sol, the daughter of Veronica and Gabriel, had taken it for a ride.  While driving the vehicle Sol accidentally hit Fiallo, pinning him between the ST Express and his truck.  Fiallo was seriously injured and brought claims for his injuries against Sol, her parents, and the owners of the vehicle.  The owners, who are not parties to this lawsuit, had insured the ST Express under a State Farm recreational vehicle policy, and they submitted a claim for which State Farm paid Fiallo $100,000.  Having no recreational vehicle policy, the Baldassinis sought coverage under their State Farm automobile policy instead.  State Farm denied their claim on the ground that the "golf cart involved in [the] loss does not qualify as a car."  The

2

Baldassinis then settled with Fiallo, assigning him their right to pursue coverage under their insurance contract.

After that assignment, State Farm filed a declaratory judgment action against Fiallo and the Baldassinis in federal district court seeking a declaration that the ST Express was not a "car" under the Baldassinis' insurance contract. Fiallo and the Baldassinis answered the complaint and counterclaimed for breach of contract. After considering cross-motions for summary judgment, the district court granted summary judgment for State Farm, finding that the contract was unambiguous and that the vehicle was not covered by it. Fiallo and the Baldassinis now appeal.

## II.

We review de novo a district court's grant of summary judgment. Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012). We also review de novo a district court's interpretation of contract provisions. Ohio Cas. Ins. Co. v. Holcim (US), Inc., 548 F.3d 1352, 1356 (11th Cir. 2008). Florida law governs our interpretation of the contract here. See Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564–65 (11th Cir. 1990).

This case hinges on whether the ST Express fits within the definition of "car" in the Baldassinis' State Farm contract. That contract defines a car as "a land motor vehicle with four or more wheels, which is designed for use mainly on public roads." Because the parties agree that an E-Z-GO ST Express "is a land

3

motor vehicle with four or more wheels," the only question we must decide is whether it was "designed for use mainly on public roads." If the answer is yes, Fiallo and the Baldassinis can defeat summary judgment (and possibly win summary judgment themselves) because the contract will cover the vehicle. Alternatively, they can overcome summary judgment if the definition is ambiguous, because ambiguities in insurance contracts are interpreted in favor of the insured. Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007). Here, however, Fiallo and the Baldassinis cannot prevail because the contract's meaning is plain and the vehicle in question is not covered by it.

Under Florida law, "insurance contracts are construed according to their plain meaning." Garcia, 969 So. 2d at 291 (quotation marks omitted); see also Harrington v. Citizens Prop. Ins. Corp., 54 So. 3d 999, 1001 (Fla. 4th DCA 2010) ("Insurance policy terms must be given their everyday meaning and should be read with regard[] to ordinary people's skill and experience."). As one Florida District Court of Appeal has explained, the plain meaning of the phrase "designed for use" is that an object has been made for a particular purpose so that it can be used for that purpose with reasonable efficiency and safety. Am. Emp. Ins. Co. v. Yeomans, 356 So. 2d 1281, 1285 (Fla. 2d DCA 1978) ("'[D]esigned for use with' seems to us to connote an object planned with a particular use in mind and so manufactured as to serve that use with reasonable efficiency and safety.")

4

(quotation marks omitted).  Another Florida District Court of Appeal has interpreted the phrase "mainly on public roads" to mean that a vehicle is "primarily" used on "public highways."  See State Farm Fire & Cas. Co. v. Becraft, 501 So. 2d 1316, 1317 (Fla. 4th DCA 1986) ("Unquestionably, the dune buggy involved here was primarily designed for use off the public highways, albeit it was usable on such highways, and was licensed therefor, and on occasion used thereon.").

Applying the everyday meaning of the phrase "designed for use mainly on public roads" to the ST Express can lead to only one conclusion.  That vehicle was not designed for use mainly on public roads.  Its manual says:

> These vehicles are <u>designed</u> and manufactured <u>for off-road use</u>.  They do not conform to Federal Motor Vehicle Safety Standards and are <u>not equipped for operation on public streets</u>.

(emphasis added).  Textron, the manufacturer, even placed a sticker on the ST Express' dashboard warning against driving the vehicle on highways.  It also did not equip the ST Express with a number of safety features required by law for passenger cars driven on public roads:  a brake system acting on all wheels, a windshield meeting applicable glazing requirements, a windshield defrosting and defogging system, a compliant transmission shift lever, an outside rearview mirror, and a compliant seatbelt assembly and anchorage system.  See 49 C.F.R. § 571.  Nor did the owners or anyone else make modifications to the vehicle to make it

5

roadworthy, such as increasing its maximum speed beyond its original limit of 16.5 miles per hour.[1]  See, e.g., Angelotta v. Sec. Nat. Ins. Co., 117 So. 3d 1214, 1216–17 (Fla. 5th DCA 2013) (holding that, by modifying a golf cart to exceed 20 miles per hour, the owner had converted it into a vehicle capable of being operated on public roads); Becraft, 501 So. 2d at 1318 (holding that an owner converted an off-road dune buggy into an on-road vehicle when he modified and licensed it for use on Florida highways).  As a result, the ST Express would be banned from interstate highways in the at least twenty-five states that require vehicles to drive 40 miles per hour or faster.  See Victor Muchuruza & Renatus N. Mussa, Speeds on Rural Interstate Highways Relative to Posting the 40 mph Minimum Speed Limit, 7 J. Transp. & Statistics, nos. 2/3, 2004, at 71, 72.

All of this establishes that, even though the ST Express has some safety features, like brake lights, that would minimize some of the dangers of driving it on a highway, it is not, as the policy language requires, "designed for use mainly on public roads."  Because unambiguous policy terms are enforced as they are written, see Garcia, 969 So. 2d at 291, and because the ST Express does not fit

---

[1] A 1998 final rule of the National Highway Traffic Safety Administration set the minimum top speed for on-road "golf cars" at 20 miles per hour.  Federal Motor Vehicle Safety Standards, 63 Fed. Reg. 33,194, 33,209 (June 17, 1998) (to be codified at 49 C.F.R. pt. 571).  Florida law also sets the minimum top speed for on-road golf carts, or as they are now known "low-speed vehicles," at 20 miles per hour.  See, e.g., Fla. Stat. §§ 316.212, 316.2122, 320.01(41); see also Angelotta, 117 So. 3d at 1216–17.  The ST Express lacked the top speed that federal and Florida law require for road use vehicles.

within the plain meaning of the definition of "car" in State Farm's contract, that contract does not cover Fiallo and the Baldassinis' claim.[2]

**AFFIRMED.**[3]

---

[2] We note that Fiallo and the Baldassinis argue that, if the ST Express is not a car under State Farm's definition, the terms "car" and "private passenger car" in the contract become superfluous. We disagree. A vehicle may be "designed for use mainly on public roads" (and therefore a car under State Farm's definition) yet not be "designed solely to carry persons and their luggage" (which is an attribute of private passenger cars under its definition). For example, a "car" might have the primary purpose of carrying cargo, materials, or tools.

[3] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous agreement of the panel under 11th Cir. R. 34-3(f).