[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13304

Non-Argument Calendar

_____

GEICO GENERAL INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

*versus*

EILEEN GONALEZ,

FRANK BENNAR,

Individually, and as parents and natural guardians,

DEVIN BENNAR,

A minor,

ZABRYNA HERNANDEZ ACUNA,

Individually,

2                    Opinion of the Court                    21-13304

Defendants-Counter Claimants-Appellants,

LUIS O. CHIONG, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-21549-KMW

_____

Before GRANT, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal requires us to determine whether a golf cart qualifies as a "private passenger auto," as that term is defined in an insurance policy. We conclude that the policy definition does not exclude golf carts, and that the district court therefore erred in entering judgment in favor of the insurance company. We reverse in part, vacate in part, and remand for further proceedings.

## I.

GEICO General Insurance Company filed this declaratory action in the Southern District of Florida, seeking a ruling that an insurance policy it issued to Monika and Jesse Acuna did not

provide coverage for an accident allegedly caused by the insureds' minor daughter, Zabryna Hernandez Acuna, while she was driving a golf cart.  The accident was the subject of a personal-injury lawsuit brought against Zabryna and Monika Acuna and others by the parents of Devin Bennar, a passenger in the golf cart who was injured during the accident.

According to the personal-injury complaint, Zabryna was driving a golf cart owned by Luis Chiong to or from a golf course in south Florida when she caused a collision with a Dodge Caliber. Devin was ejected from the golf cart and suffered a permanent traumatic brain injury.  Ultimately, Devin's parents obtained a consent judgment against Zabryna for $18 million.

Zabryna was covered under her parents' liability insurance policy with GEICO for bodily injury and property damage arising from the use of, as relevant here, a "non-owned auto."  The policy defined "non-owned auto" as "a private passenger, farm, or utility auto or trailer not owned by, furnished or available for regular use for either you or your relative."  GEICO contended that it was not required to defend or indemnify the Acunas for the accident because the golf cart was not a "private passenger auto," a "farm auto," or a "utility auto" as defined in the policy.

The district court agreed.  It granted GEICO's motion for summary judgment on the declaratory claim and on the defendants' counterclaim for breach of contract and denied the

defendants' motion for summary judgment on the declaratory claim.  This appeal followed.[1]

## II.

Florida law applies in this diversity-jurisdiction action involving the interpretation of an insurance policy issued in Florida.  *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1220 (11th Cir. 2015); *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 & n.1 (11th Cir. 2004).  We review a district court's interpretation of an insurance policy and application of state law in a summary judgment ruling de novo. *Hegel*, 778 F.3d at 1219; *Horn v. Liberty Ins. Underwriters, Inc.*, 998 F.3d 1289, 1293 (11th Cir. 2021).  Summary judgment is appropriate where "the movant shows that there is no genuine

---

[1] We carried with the case the question of whether the district court's failure to enter a final default judgment against defendant Luis Chiong affected our appellate jurisdiction.  Upon consideration, we are satisfied that we have jurisdiction over this appeal despite the omission because aside from the procedural matter of a separate judgment, the claims against Chiong have been resolved.  *See Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1530–31 (11th Cir. 1985).  Chiong failed to answer GEICO's complaint or enter an appearance, and the district court directed the clerk to enter default against Chiong and directed GEICO to file a motion for final default judgment. Because GEICO sought only declaratory relief against Chiong, the district court was not required to determine the amount of damages due from him. In short, the district court's order "clearly evidenced that it had entered its final decision" with respect to Chiong.  *Id.* at 1531.

21-13304                Opinion of the Court                5

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In diversity cases like this one, we must decide questions of state law "the way it appears the state's highest court would." *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021) (quotation omitted). If the state's highest court has not issued an opinion on a question of state law, we must apply the relevant decisions of the state's intermediate appellate courts, "absent some persuasive indication that the state's highest court would decide the issue otherwise." *Id.* (quotation omitted).

"Under Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quotation omitted). Ambiguities in insurance policies are construed against the drafter and in favor of the insured. *Id.* Thus, if "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," the policy will be interpreted to provide coverage. *Id.*

The dispute here involves the meaning of the term "private passenger auto." The policy defines "private passenger auto" as a "four-wheel private passenger, station wagon or jeep-type auto, including a farm or utility auto as defined." A "farm auto" is defined as "a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming." And the policy defines "utility auto" as "a vehicle, other than a farm auto, with gross vehicle weight of 15,000 pounds or

less of the pick-up body, van or panel truck type not used for commercial purposes."

Read in isolation, the policy definition of "private passenger auto" includes golf carts like the one involved in the accident here—the golf cart was a four-wheeled, privately owned, passenger vehicle. And as one Florida appellate court has explained, the undefined term "auto" can encompass golf carts. *Fireman's Fund Ins. Cos. v. Pearl*, 540 So. 2d 883, 884 (Fla. Dist. Ct. App. 1989).

Reading the definition of "private passenger auto" in context to include the definitions of the terms "farm auto" and "utility auto" results in a narrower interpretation—but one that still does not exclude golf carts. In *Martin v. Nationwide Mutual Fire Insurance Company*, Florida's Second District Court of Appeal interpreted a liability insurance policy with similar definitions for the terms "private passenger automobile," "farm automobile," and "utility automobile." 235 So. 2d 14, 16–17 (Fla. Dist. Ct. App. 1970). The court explained that those definitions revealed a common— "albeit implicit"—element: all had "as an inherent design characteristic the capacity to be driven legally and safely on public highways." *Id.* at 16. The court determined that the insured's "jeep," a "moveable vehicle" which he had "built from scratch" from miscellaneous car parts and used to drive around his pasture, was not an "automobile" within the meaning of the policy because it "was not intended to be road operable" and was never driven on the road. *Id.*

In contrast to the homemade vehicle at issue in *Martin*, golf carts typically can be driven safely on public roads where their use is allowed by law. Of course, golf carts are designed to be used mainly "at low speed on a golf course or for similar sporting or recreational purposes, or for transportation on private property"; operation on the public roadway is not their principal purpose. *Herring v. Horace Mann Ins. Co.*, 795 So. 2d 209, 211 (Fla. Dist. Ct. App. 2001). Thus, one Florida appellate court has concluded that a golf cart did not meet an insurance policy's definition of a "motor vehicle" where that term was defined to include only vehicles "designed for use on public roads." *Id.* And a panel of this Court has held that a golf cart was not a "car" under a policy that defined that term as a four-wheeled motor vehicle "designed for use mainly on public roads." *State Farm Mut. Auto. Ins. Co. v. Baldassini*, 545 F. App'x 842, 843–44 (11th Cir. 2013) (unpublished).

But the Acunas' insurance policy had no such limiting language for liability coverage,[2] and *Martin*'s interpretation does not require that a "private passenger auto" be designed specifically for roadway use—only that it have the *capacity* to be used legally and safely on public roads. *Martin*, 235 So. 2d at 16. Golf carts do.

---

[2] The policy did include similar language in the section providing personal injury protection coverage, which among other things defined a "motor vehicle" in part as "any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida." The defendants in the declaratory judgment action do not contend that the golf cart qualified as a "motor vehicle" under that definition.

Florida law allows golf cart use on designated county roads and municipal streets, on certain state park roads, and to cross state highways in specified locations. Fla. Stat. § 316.212. Golf carts are ubiquitous—and legal—on public roads in golfing and beach communities throughout Florida. And they are frequently encountered on neighborhood streets traveling to or from a nearby golf course, just as Zabryna Acuna and her passengers apparently were doing when the accident occurred.

GEICO argues that the golf cart Zabryna was driving on the roadway could not have been driven legally on the road because it lacked some of the equipment that Florida requires for cars, such as windshield wipers and seatbelts. That argument fails for two reasons. First, Florida law does not require the same equipment on golf carts as it does on cars; a golf cart can be driven legally on designated roads without windshield wipers or seatbelts. *See* Fla. Stat. § 316.212(6). And second, even if, as GEICO contends, the golf cart lacked some of the equipment (a rearview mirror and red warning stickers) that Florida requires for golf carts, it still had the capacity to be driven legally and safely on the road if those equipment deficiencies were corrected. *Cf. Martin*, 235 So. 2d at 16 (distinguishing the built-from-scratch "jeep" from "the situation where an automobile is rebuilt, or undergoes major repairs or is inoperable because of the temporary absence of an essential component").

In short, the district court erred in determining that the golf cart did not qualify as a "private passenger auto" as defined in the

insurance policy and that the policy did not provide liability insurance coverage for the accident for that reason. It therefore erred in granting GEICO's motion for summary judgment on its claim for declaratory relief, and in denying the defendants' cross-motion for summary judgment on GEICO's declaratory claim.

The district court's error in interpreting the insurance policy also formed part of the basis for granting GEICO's motion for summary judgment on the defendants' counterclaim for breach of contract. The court adopted the magistrate judge's report and recommendation, which explained that since (under the erroneous interpretation of the contract) GEICO had no contractual obligation to provide liability coverage, it could not have breached the contract by denying the claim for coverage. This conclusion was faulty because of its faulty premise.

But the magistrate judge's recommendation was also based in part on his observation that the defendants' counterclaim did not set out a coherent claim for breach of contract—the defendants seemed to be trying to disguise what was actually a premature bad-faith failure-to-settle claim as a breach-of-contract claim. This criticism appears justified; among other things, the defendants sought extra-contractual damages that may be awarded on a statutory bad-faith claim in Florida, but not in an action for breach of an insurance contract. *See Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579, 582 (Fla. 2021). On remand, the district court will need to reconsider GEICO's motion for summary judgment on the counterclaim in light of our decision on the

coverage issue, the relief sought in the counterclaim, and defenses to the counterclaim that were raised by GEICO but not reached by the district court.

## III.

For the reasons discussed above, we REVERSE the district court's order granting GEICO's motion for summary judgment on its claim for declaratory relief and denying the defendants' motion for summary judgment on that claim, VACATE the order granting GEICO's motion for summary judgment on the defendants' counterclaim, and REMAND for further proceedings.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**